MORRIS (Howell, Intervener) v. BEAN et al.

(Circuit Court, D. Montana. May 8, 1906.)

1. COURTS—UNITED STATES COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.

In a suit concerning water rights the thing in controversy is the right to the use of the water, and where that exceeds in value $2,000, exclusive of interest and costs, a Circuit Court of the United States has jurisdiction.

2. WATER AND WATER COURSES—ACTIONS TO PROTECT RIGHTS—RIGHT OF ACTION—INTERSTATE STREAMS—JURISDICTION.

A citizen of one state may maintain a suit in a Circuit Court of the United States in another state to enjoin the unlawful diversion of water

in the state where the suit is brought, which prevents its flowing· to his lands in the state of his. residence.

3. SAME—APPROPRIATION OF WATER RIGHTS.

The complainant, a citizen and resident of Wyoming, instituted a suit in the Circuit ·Court of the United States ·for the District of Montana to enjoin the defendants, residents and citizens of that state, from diverting water from a stream rising in Montana and flowing into Wyoming. *Held,* that' defendants could not justify their diversion of water in Montana in hostility to the rights of the complainant in Wyoming upon the ground that the laws of Montana authorize its citizens to appropriate water within the state. *Held* further, that the fact that the stream has its source in Montana, and from thence flows into Wyoming, does not affect the right to appropriate, but that the general doctrine of priority governs regardless of state lines.

4. SAME—DEFINITION.

An appropriation consists of the diversion of water and its application to some beneficial use. In the absence of any statute, if the work is prosecuted with reasonable diligence, the right of the appropriator relates to the beginning of the work.

5. SAME—RECORDING—NOTICE.

Where one appropriates under a statute, the recording of the claim· is constructive notice, but such statutes do not preclude the taking of water for beneficial uses by methods other than those therein prescribed. The effect of the statutes is to preclude an appropriator from claiming, by the doctrine of relation, to the time when the work was begun as against one who does comply with the statutory requirements, and prosecutes the work to completion in accordance therewith.

6. SAME—APPROPRIATION IN WYOMING—REPEAL OF STATUTE.

Complainant, without complying with the statutes of Wyoming, diverted water from Sage creek in that state. Under the statutes then in force, one so appropriating was precluded from giving evidence in any proceeding to enforce a claim to the water thereby appropriated, but' the statute was repealed prior to the institution of this suit. *Held,* that the effect of the statute was not to deny the right to appropriate, and that its repeal removed the only obstacle to the assertion of his rights in the courts. *Held* further, that the rights of complainant must be governed by the laws of Wyoming, where his appropriation was made.

7. SAME—EQUITIES.

One who appropriates water is entitled to the full amount appropriated, to the exclusion of all subsequent takers, and equity will not intervene to deprive one of the rights thus acquired by distributing the water to those subsequently claiming, even though the general benefits would be thereby increased.

8. SAME—RIPARIAN RIGHTS.

The defendants acquired lands in the Crow Indian Reservation in Montana subsequent to appropriations made in Wyoming, and they claim riparian ownership as successors of the Indians. *Held,* that the Indians never had any riparian rights, the fee always having been in the government subject to their occupancy. *Held* further, that appropriations could be made of waters running through the reservation which are superior to the rights of those subsequently becoming riparian owners.

9. SAME—RIPARIAN OWNER—RIGHT TO USE.

While a riparian owner has the right to reasonably use the water of a stream, he cannot deprive his co-riparian owners of like use. In the absence of any testimony as to what is a reasonable use, there can· be no decree regulating the use as between such owners.

10. SAME—STATUTE OF LIMITATIONS—NATURE OF POSSESSION.

The statute of limitations does not run upon a scrambling possession. The use must be adverse, exclusive, and uninterrupted under a claim of

right, and the gradual and imperceptible encroachment by subsequent appropriators upon the rights of a prior appropriator will not permit the invoking of the statute as against the latter.

11. SAME—ABANDONMENT.

The provisions of the statute of Wyoming that failure to use water appropriated for a period of two years is to be construed as an abandonment applies to a voluntary act, and not to an enforced discontinuance.

12. SAME—ENFORCEMENT OF RIGHTS—LACHES.

One is not guilty of laches who complains of hostile diversion, and receives water when the same is turned down to him from time to time, or who is prevented from the use of water appropriated by him by gradual diminution through hostile diversions, unless such diversions continue with the acquiescence, knowledge, and consent of such appropriator.

13. SAME—ESTOPPEL.

One who goes upon a stream and diverts water must take notice of all prior appropriations, whether made pursuant to statutory notice or otherwise. The volume of water in the stream and the visible supply is notice of all waters appropriated, and where one takes subsequently to another of the waters of a stream he cannot invoke the doctrine of estoppel as against a prior appropriator on the ground that such appropriator has stood by and permitted him to build up improvements on the strength of diversion of the water, for the reason that one is as much estopped as the other; the facts being within the knowledge of both.

14. SAME—DAMAGES.

Where various persons along a stream divert water in violation of the rights of a prior appropriator, without any community of action, nothing other than nominal damages can be awarded in a suit in equity to restrain the defendants from diverting the water.

(Syllabus by the Court.)

See 123 Fed. 618.

McConnell & McConnell, James R. Goss, and Fred H. Hathorn, for complainant.

McConnell & McConnell and James R. Goss, for intervener.

George W. Pierson, and O. F. Goddard, for defendants.

WHITSON, District Judge. Sage creek is a tributary of the stream designated in these proceedings as Stinking Water river, but geographically known by the euphonious name of Shoshone. This creek rises in the state of Montana, and flows into that river in the state of Wyoming. The complainant, a citizen and resident of Wyoming, is the owner of 160 acres of agricultural land situated in that state, which is riparian to Sage creek. He settled in the year 1887 under the homestead law, and in due course received a patent dated the 12th day of February, 1902. The land being arid in character, and requiring irrigation for the raising of agricultural crops, in April, 1887, complainant constructed a ditch by means of which he diverted water for the irrigation of it.

The intervener, Howell, alleges in his complaint that he is a citizen of the state of Wyoming. It is shown that he is the owner of 200 acres of agricultural land in that state of like character to that of the complainant. He constructed a ditch in August, 1890, for the irrigation of his land, and both the complainant and the intervener have used the

water diverted by them ever since their respective diversions, except when prevented by the diversions of the defendants. The intervener has made entry and holds a final receipt. As to whether his land is riparian to Sage creek does not appear from the record. The defendants are all citizens and residents of the state of Montana. They claim the waters of Sage creek and Piney creek, its tributary, by virtue of diversions made by them, and the use of the water so diverted; they deny the rights of the complainant and intervener upon grounds which will hereinafter more fully appear, but are subsequent in time to both. Complainant seeks to enjoin the defendants from the diversion of water from Sage and Piney creeks in Montana to his deprivation of the use of the waters of Sage creek in Wyoming, and the intervener seeks like relief.

The cause was referred to the master, who has reported the testimony, together with his findings of fact and conclusions of law. Those findings to which exceptions have been taken, and those tendered and not found, need only be considered in a general way, leaving a specific mention of them to subsequent proceedings to be had in accordance with this opinion. One of the pivotal points upon which the case largely turns is the finding that the complainant had not at the time of the hearing complied with the laws of the state of Wyoming relating to the appropriation of water, and the conclusion that he is not entitled to any injunctive relief for that reason. As this incidentally involves the jurisdiction of the court, and as it is challenged upon other grounds, naturally, the power to consider the case must first be inquired into.

1. Jurisdiction. The objection to jurisdiction is threefold:

(a) The complainant filed no notice as a claimant to the waters of Sage creek, as required by the laws of Wyoming, and the master concluded that the filing of such notice was a prerequisite to the making of a valid appropriation. Relying upon that fact and the conclusion thus reached, it is contended that the jurisdiction fails because it cannot rest upon the citizenship of the intervener, claimed by the defendants to be the same as that of themselves, and, the complainant having failed to establish any right, it cannot rest upon his citizenship, and therefore a dismissal of the suit must follow. This involves the question whether complainant is an appropriator. It is conceded by his counsel, as the master found, that he did not comply with the statutory requirements of Wyoming. The inquiry is, could one seeking to make an appropriation at the time the complainant diverted and used water from Sage creek acquire the right to its use without complying with the statutes of that state? An appropriation of water consists in the taking or diversion of it, and its application to some beneficial purpose. "Appropriation" is a much abused word. It is often loosely spoken of as the preliminary step—such as filing a notice, making a claim to the water, or the like—but in its legal significance is embodied not only the claim to the water, but the consummation of that claim by actual use. Long before the enactment of any statute in the arid states or territories, the custom of taking water had ripened into the right to use it. Jennison v. Kirk, 98 U. S. 456, 25 L. Ed. 240; Atchison v. Peterson, 20 Wall. 507, 22 L. Ed. 414; Basey et al. v. Gallagher, 20 Wall. 670, 22 L. Ed.

452; Broder v. Water Company, 101 U. S. 274, 25 L. Ed. 790. After the custom had been fully established, statutes were enacted for the purpose of protecting appropriators by furnishing a public record, thereby avoiding disputes over priorities. It cannot be said that these statutes were enacted for the purpose of enabling the appropriator to claim by relation to the date when work was begun, because that was the rule prior to any legislation upon the subject, if the work was prosecuted with reasonable diligence. Long on Irrigation, § 51; Irwin v. Strait et al. (Nev.) 4 Pac. 1215; Board of Commissioners v. Leonard (Colo. App.) 34 Pac. 583; Kelly v. Water Company, 6 Cal. 109; Nevada Ditch Company v. Bennett (Or.) 45 Pac. 478, 60 Am. St. Rep. 777; Murray v. Tingley (Mont.) 50 Pac. 725; Moyer v. Preston (Wyo.) 44 Pac. 848, 71 Am. St. Rep. 914; Cole v. Logan (Or.) 33 Pac. 569. But the rule of relation was in a measure uncertain in its application, in that what constituted reasonable diligence in the completion of the work was a matter within the sound discretion of the courts. Again, the appropriator who initiates his right by statutory notice is required to designate the amount of water claimed, the purpose for which it is to be used, if for irrigation, the land upon which it is to be applied, etc., thus affording information to other intending appropriators, and giving constructive notice as to the amount of water which has already been claimed from the common source of supply. But where one has actually diverted water, and is using it, the right to its use may, by analogy, be likened unto the doctrine that one purchasing real estate must take notice of the rights of those in possession, notwithstanding the recording statutes. Water diverted from a stream naturally diminishes the volume. One seeking to acquire the right to the use of water must take notice of the amount available and visible, and it must be conclusively presumed that he inquires into the extent of the supply from which the water is to be drawn, and how that supply has been diminished by others whose rights are prior in time. These statutes were never intended to destroy the right of appropriation by methods other than those defined by them. Their only effect is to deny the power of an appropriator who fails to file the notice required, to claim as of the date of the beginning of his work; the penalty for such failure being to limit the right to the time when the water is actually applied and used. Long on Irrigation, § 39, expresses the principle in this language:

"The statutes did not change the rule as to what constitutes an appropriation, but their object was simply to preserve evidence of the appropriator's rights, and to regulate the doctrine of relation back. In accordance with these principles, it is held that one who fails to comply with the statutory requirements, but who actually diverts water, and applies it to a beneficial use, in the absence of any conflicting adverse claim, acquires a valid title thereto, which cannot be devested by another appropriator, who complies with the terms of the statute after the former has completed his appropriation. * * * Where the statutory requirements have not been complied with, the rights of the appropriator, which, but for the statutes, would relate back to the commencement of the work of appropriation, relate back only to the completion of the work; this being the only change wrought in the law by the statutes."

These views are sustained by numerous authorities: Murray et al. v. Tingley, 50 Pac. 723, 20 Mont. 260; Wells v. Mantes et al. (Cal.) 34 Pac. 324; Cruse v. McCauley (C. C.) 96 Fed. 370; DeNecochea v. Curtis (Cal.) 20 Pac. 563; reaffirmed 22 Pac. 198; Burrows v. Burrows et al. (Cal.) 23 Pac. 146; Watterson v. Saldunbehere (Cal.) 35 Pac. 432.

We are now to inquire whether any law of the territory of Wyoming or custom prevailing there prevented an appropriation other than by notice duly filed; for, if not, complainant has brought himself within the general rule by which his rights must be measured. At the date he began the use of water the statute of the territory precluded the giving of evidence by one claiming to be an appropriator in any case involving his right, unless there had been a compliance with the requirement of filing notice of his claim with the officer therein designated.

The Supreme Court of Wyoming, referring to this statute in Moyer v. Preston, 44 Pac. 845, 71 Am. St. Rep. 914, said:

"The contemporary construction placed upon that statute although the question was not presented to this court, we understand to have been that the act itself provided the penalty for the failure to file the·required statements, viz, that in any adjudication of water rights evidence would not be received in behalf of any person until he had filed the statements. The object of these particular provisions was obviously the establishment and preservation of a record of water rights, which had become in many instances of great value. The section requiring such statements to be filed in the offices of the county clerk and clerk of court was repealed in 1888, and another provision ·substituted, providing for the filing of the statements in the office only of the county clerk, who is ex officio register of· deeds; and in 1890, when this requirement was abrogated, and the whole matter was transferred to the office of the state engineer, where the primary records were to be kept, the section of·the statute of 1886, fixing the penalty for the failure to file the statements, was repealed. The law of 1890 required the clerks of court to transfer to the office of the state engineer all certificates of county surveyors as to measurements of ditches which had been provided for under another statute of 1886, afterwards repealed; but the act of 1890 made no disposition of the statements of owners which had been filed with the clerks of court."

The statute having been repealed, the complainant cannot comply with its provisions. Its repeal removed the only obstacle to the assertion of his right in court. He could, therefore, at the present time give evidence in a controversy in Wyoming relating to the subject-matter of this suit, and hence he cannot be denied a remedy in this court which would be accorded him within the jurisdiction of the forum by whose laws his rights as an appropriator must be governed. Nor is there anything in the Constitution or laws of Wyoming which can be construed as a devesture of the right which the complainant acquired by virtue of his use of the water, or which can prevent him from the assertion of it.

Article 8, § 3, of the Constitution of Wyoming reads as follows:

"Priority of appropriation for beneficial uses shall give the better right. No appropriation shall be denied except when such denial is demanded by the public interests."

Section 895 of the Revised Statutes of that state expressly recognizes priority in the use of water.

In Moyer v. Preston, supra, this language was used:

"To constitute an appropriation there must exist, not only an intent to take the water, but that attempt must be accompanied or followed by some open physical demonstration, and there must ultimately be an application to some beneficial use."

Again, in construing the priority between two claimants of water, neither of whom had complied with the statute, it was said:

"The work of construction was prosecuted with diligence until completion, followed by an immediate application of the water to beneficial uses, which application had been continued."

In Farm Investment Co. v. Carpenter (Wyo.) 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918, the constitutional provision above quoted was construed as follows:

"The constitutional declaration was not intended to interfere with previously accrued rights to use the public waters of the state, and it does not conflict with such rights. It was, however, by all the constitutional expressions undoubtedly intended that such rights and all appropriations should be regulated upon the basic principles therein enunciated. That the constitutional provision did not impair rights already accrued is apparent, not only from the accompanying provisions, but from the nature of such rights. * * * The appropriation is made in the first place upon the basis of public ownership of the water, and is protected instead of impaired by the constitutional declaration."

The conclusion must be that complainant is an appropriator, fully invested with all the rights attaching to that interest in property.

(b) It is objected that the amount in controversy does not exceed the sum or value of $2,000, exclusive of interest and costs. The only testimony upon the subject shows that the water right of the intervener, Howell, is worth $25 per acre, and that of complainant a like amount. It is clearly shown, and the court must know, that in an arid country, where irrigation is required for the raising of crops, the land is worthless without it. The Supreme Court has held that the matter in dispute is that upon which the jurisdiction depends. Elgin v. Marshall, 106 U. S. 578, 1 Sup. Ct. 484, 27 L. Ed. 249; Bruce v. Manchester & Keene R. R., 117 U. S. 514, 6 Sup. Ct. 849, 29 L. Ed. 990; Stinson v. Dousman, 20 How. 461, 15 L. Ed. 966. The water right is the only thing in dispute. It is neither the land, nor in this suit can it be the damages, for it is not shown that the tortious acts of the defendants were joint. The jurisdiction in this regard, therefore, rests upon the value of the water right, and, resting upon that, clearly the amount in controversy is in excess of that required to sustain it. Complainant will be given leave to amend his bill to conform to the proofs upon this view.

(c) The jurisdiction is challenged because Sage creek is an interstate stream, which it is argued precludes an appropriator in Wyoming from the assertion of his rights in Montana; that the state of Montana having recognized the right to appropriate the waters within its borders, it becomes a matter of state concern, which would put upon Wyoming the necessity, in the exercise of its sovereignty, of instituting a suit in the Supreme Court of the United States against the state of

Montana, and that a private citizen of one state cannot enter the courts of another to assert that which is exclusively an exercise of the sovereign power of the state; that the defendants are protected by the laws of Montana, which authorize appropriations to be made within its territorial limits; and that it is not competent for the courts to interfere with the sovereignty of one state by permitting a citizen of another state to collaterally assail that which it has recognized by its laws, and will uphold as a part of its political jurisdiction.

Defendants' counsel have illustrated their contention in this way: A riparian owner on the Mississippi river might seek to enjoin the diversion of the waters of Sage creek in Montana because they eventually reach the Missouri river, and finally through that river flow into the Mississippi. This argument may be classed under the head of reductio ad absurdum, which sometimes is very effective in illustrating results which may flow from the doing of a given thing. It will be time enough to solve that problem should it ever be propounded.

The contention ignores the right to appropriate water which is recognized by both states. It assumes a condition which does not in fact exist, namely, that the state of Montana has undertaken to authorize the appropriation of water as against a prior appropriator in another state. It has authorized by its laws the taking of unappropriated waters. Indeed, it could not authorize the taking of any other without doing violence to well-known principles; and the rule would be the same whether the statutes of that state expressly limited the right to take unappropriated waters or were silent upon the subject; because the doctrine of appropriation, as construed in Montana and elsewhere, is well understood to apply to water the right to the use of which has not already vested in others. In both states the custom of appropriation had been fully recognized before the complainant and intervener began the use of the water claimed by them, and it had the sanction of the statutes of both while they were territories, and subsequently received express recognition in the Constitution of Montana (article 3, § 15), and in the Constitution of Wyoming, as shown elsewhere in this opinion. It also had the sanction of the general government, the owner of both the land and the water, and the artificial line drawn between the two territories, created by Congress, could in no way debar one from the exercise of a right so universally acknowledged. A natural stream flowing in Wyoming was as much upon the public lands as the same stream flowing in Montana. At the time of the adoption of the constitutions of those states the rights of the complainant and intervener had vested. For the courts, in the absence of any express and unqualified assertion either in the Constitution or statutes of Montana, or any claim on the part of the state through its proper officers, through whom the contention could only be made, if it could be made at all, to deny the existence of an appropriation made in Wyoming, would be to violate that which has been accepted without dissent, and to disturb vested rights which have the approval of general acquiescence, at the behest of a private suitor, who seeks to invoke the power of the state to do that which it does not even contend for. It would overlook the well-known comity existing between these states, both of

which recognize the same doctrine as applied to the use of water, in so far as it relates to an appropriation of the same, as well as to ignore a public policy well recognized and existing, which has its approval in custom of equal efficacy to the right to appropriate at all—a right which inheres in, and is a part of, the custom to which appropriations of water must be referred.

In the early stages of this suit Judge Knowles refused to sustain the views thus presented by the defendants. Whether the ruling made is the law of this case does not become material, because the reasons which actuated him in his decision are not only based upon sound principles, but are sustainable upon authority. No case has been cited where the distinction sought to be drawn has prevailed in the courts, but, on the contrary, apparently, wherever the question has arisen the holding has been the other way. Howell v. Johnson (C. C.) 89 Fed. 556; Morris v. Bean (C. C.) 123 Fed. 618; Hoge et al. v. Eaton et al. (C. C.) 135 Fed. 411; Anderson et al. v. Bassman et al. (C. C.) 140 Fed. 14; Willey v. Decker (Wyo.) 73 Pac. 210, 100 Am. St. Rep. 939.

The court therefore has jurisdiction.

2. Riparian rights. The complainant does not and cannot claim as a riparian owner. The intervener has not disclosed such proprietorship. Under the laws of Wyoming, by which their rights must be adjudged, that principle is not recognized. The defendants do claim as such. They base their claim upon the assumption that because the land now owned by them was at the inception of the rights of their adversaries embraced within the limits of the Crow Indian Reservation, that the taking of water by them never conferred the right to its use against the riparian rights of the defendants, acquired, they contend, as the successors in interest to the Crow Indians.

It is difficult to understand how this contention, if upheld, would aid them. The Indians made no appropriations. If all that the defendants contend for in this regard should be sustained, it would be of small value, because the right of a riparian owner to use water for irrigation is limited to a reasonable use, and that reasonable use will not permit one owner to deprive his co-owner of the same privilege he exercises himself. Lux v. Haggin, 69 Cal. 255–390, 10 Pac. 674; Long on Irrigation, § 9–18–20; Union Milling & Min. Co. v. Ferris, 2 Sawy. 176, Fed. Cas. No. 14,371; Union Milling & Min. Co. v. Dangberg, 2 Sawy. 450, Fed. Cas. No. 14,370; Gould v. Eaton, 117 Cal. 539, 49 Pac. 577, 38 L. R. A. 181.

While the defendants have pleaded their riparian ownership, they have waged the contest as appropriators. Their testimony was directed exclusively to that claim, and there is no proof as to what would constitute a reasonable use by them, considering the rights of those whose lands are situate in Wyoming. If a decree should declare that they are entitled to a reasonable use of the water flowing through their lands, the rights of the parties would be left in such a state of uncertainty as to render it void. Morris v. Bean (C. C.) 123 Fed. 618. When the right of the Indians was extinguished, and the land was thrown open to settlement, it became public, and, assenting for the

sake of argument to the theory of the defendants, all that was in the way of the validity of the prior appropriations had been removed, and the appropriators in Wyoming were in point of time ahead of any claim which the defendants could possibly make, because their appropriations attached eo instanti. Beecher v. Wetherby, 95 U. S. 525, 24 L. Ed. 440; Johnson v. McIntosh, 8 Wheat. 543, 5 L. Ed. 681.

It is no answer to say that, because the doctrine of riparian ownership does not exist in Wyoming, that therefore, under claim of that right in Montana, the defendants can deprive the complainant and intervener of the use of the water naturally flowing in the stream. While they cannot claim as riparian owners, yet they are entitled to the use of the water and the assertion of riparian ownership in Montana cannot be allowed to prevail as against what are held to be appropriations in Wyoming, when those appropriations are prior in time to the beneficial use of the water by the defendants. It is the water that the appropriator in Wyoming desires, and it is immaterial whether he gets it by virtue of riparian ownership or appropriation.

But this is perhaps drifting into refinements. There are more substantial reasons for denying the claims of the defendants. The Indians were not riparian owners. Their right was that of occupancy only, while the fee was in the United States.

In Beecher v. Wetherby, supra, the Supreme Court, in referring to the nature of the title of the Menomonee Indians, said:

"It is true that, for many years before Wisconsin became a state, that tribe occupied various portions of her territory, and roamed over nearly the whole of it. In 1825 the United States undertook to settle by treaty the boundaries of lands claimed by different tribes of Indians, as between themselves, and agreed to recognize the boundaries thus established; the tribes acknowledging the general controlling power of the United States, and disclaiming all dependence upon and connection with any other power. The land thus recognized as belonging to the Menomonee tribe embraced the section in controversy in this case. Subsequently, in 1831, the same boundaries were again recognized. But the right which the Indians held was only that of occupancy. The fee was in the United States, subject to that right, and could be transferred by them whenever they chose. The grantee, it is true, would take only the naked fee, and could not disturb the occupancy of the Indians; that occupancy could only be interfered with or determined by the United States. * * * The right of the United States to dispose of the fee of lands occupied by them has always been recognized by this court from the foundation of the government."

So it was said in referring to the same subject, in Johnson v. McIntosh, 8 Wheat. 543, 5 L. Ed. 681:

"The right of the Indians to their occupancy is as sacred as that of the United States to the fee, but it is only a right of occupancy. The possession, when abandoned by the Indians, attaches itself to the fee without further grant."

In case of conflict between a treaty with the Indians and a subsequent act of Congress the latter must prevail. United States v. Old Settlers, 148 U. S. 427, 13 Sup. Ct. 650, 37 L. Ed. 509; Cherokee Nation v. Southern Kansas Ry. Co., 135 U. S. 641, 10 Sup. Ct. 965, 34 L. Ed. 295; Cherokee Nation v. Hitchcock, 187 U. S. 295, 23 Sup. Ct. 115, 47 L. Ed. 183; Lone Wolf v. Hitchcock, 187 U. S. 564, 23 Sup. Ct.

216, 47 L. Ed. 299. This doctrine is inconsistent with the theory of the defendants. It would be tedious to refer to the numerous acts of Congress which have dealt with the rights of the Indians, together with the many treaties which have been made from time to time. It is sufficient to observe that legislation upon the subject has with great uniformity followed the rule so often reiterated by the Supreme Court in relation to the nature of Indian titles, which recognizes in them the right of occupancy only, subject to the paramount authority and title of the United States. Under Act Feb. 8, 1887, c. 119 (24 Stat. 388), which provides for allotments, not only does Congress adhere to the word "use" with great care as applied to the rights of the Indians, but the act provides for the issuance of patents, which would be quite unnecessary if the fee were already in the Indians. Applying the rule to this case, when the right of occupancy ceased, the fee always having been in the United States, the lands became public by being thrown open to settlement, as the term was defined in Newhall v. Sanger, 92 U. S. 761, 23 L. Ed. 769. But the land was always a part of the public domain. The rights of the defendants attached as settlers after the lands were made subject to settlement. They cannot antedate settlements made by them. At that time, prior appropriations had been made by the complainant and intervener, and defendants took their riparian rights subject to and charged with those appropriations. Benton v. Johncox, 17 Wash. 277, 49 Pac. 495, 39 L. R. A. 107, 61 Am. St. Rep. 912; Lux v. Haggin, 69 Cal. 255–390, 10 Pac. 674; Thorpe v. Tenem Ditch Co., 1 Wash. St. 566, 20 Pac. 588; Vansickle v. Haines, 7 Nev. 249.

3. Statute of limitations. The statute of limitations is applied by analogy in courts of equity to that relating to the possession of real estate. It never runs upon a scrambling possession. It presupposes adverse, exclusive, and uninterrupted possession under a claim of right. The claim must be hostile to that of the person against whom it is asserted. The aid of the statute has occasionally been invoked with success in cases of this character, but not under conditions similar to those of this case.

The defendants made their first diversions of water in 1893. A few of them have brought themselves barely within the statutory period. It often happens that persons who are takers of water from a stream gradually enlarge their diversions until they begin to deprive the first appropriators of the amount to which they are entitled. The taking is so gradual, and the enlargement of the use so imperceptible, that it is impossible to fix a time when it begins to be adverse. This is not an unusual situation, and it is presented by the testimony here. The quantity of water in this stream varies greatly from spring floods to low water in the fall. Most small streams are subject to this variation. The flow of water varies also with the seasons, depending largely upon the amount of snowfall or rain in the mountains. It is manifestly impracticable to apply the statute of limitations to such a state of affairs, and in this case particularly it could not apply, because the defendants have not had the uninterrupted use of the water for the statutory period. It is shown that they at times turned the water down, upon

demand of the complainant. They have gradually increased their diversions, and just at what point they encroached upon the rights of the complainant and the intervener cannot be determined from the testimony, and just how long it has continued cannot be ascertained; but it is clear that they did not do so to any considerable extent until after the year 1893, and this suit was brought in 1903. As to real estate the possession is easily discovered. It is susceptible of actual proof, but here it is not shown that either the complainant or intervener were ever entirely deprived of water. During the flood time water always reached them. They had the use of it for a time, some years longer than others. Who can divine with definiteness just what amount of water the defendants used to the exclusion of the complainant or intervener, or how long it was used to their exclusion each year? The burden is upon the defendants to bring themselves within the statute, and the proof must be clear before a prescriptive right will be enforced. The claim cannot prevail under the conditions disclosed. Last Chance Ditch Co. v. Heilbron (Cal.) 26 Pac. 523; Fogarty v. Fogarty (Cal.) 61 Pac. 570; Boyce v. Cupper (Or.) 61 Pac. 642; Huston et al. v. Bybee (Or.) 20 Pac. 51; Long on Irrigation, §§ 90–91–92.

4. Abandonment. The statute of Wyoming provides, in effect, that failure of one to use water appropriated for a period of two years shall be construed as an abandonment, and the defendants would avail themselves of its provisions. If it be admitted that their unlawful diversions deprived the appropriators in that state from the use of the water for more than this period, yet cessation of its use because it did not reach the parties entitled to it does not work an abandonment. Evidently that, in contemplation by the Legislature, was a voluntary act, and not an enforced discontinuance. An abandonment must always be voluntary. The statute could not have been intended to apply to anything more than failure to use from an available supply, and in its application it must be construed in the light of the well-known meaning of the words employed to express the legislative will.

5. Estoppel and laches. It is safe to say that few cases of this character have been tried where the defense of estoppel has not been interposed with result uniformly unsuccessful. The estoppel argued for here is that the parties now seeking to assert their rights ought not be allowed to do so, because they knew that the defendants were building up their improvements, and relying upon the use of the water to maintain them. An all-sufficient answer to this is that the defendants knew also that the complainant and intervener were relying upon the same water to maintain their improvements already made, and to carry on their farming operations already begun. Under this view of it, the one side is as much estopped as the other.

What is it that the appropriators in Wyoming have concealed which has misled the defendants to their prejudice? An estoppel of this character is based upon fraud—the inequity of asserting a right after having by silence misled a party by concealing facts which were unknown to him. Here they were equally known to both parties, hence the case does not present elements upon which an estoppel can be founded. Nor can it be successfully contended that the moving

parties in this controversy have been guilty of laches. The intervener has been in the courts more than once, attempting to restrain the defendants, and the complainant has protested while the supply of water grew less from year to year, until finally his ills became unbearable. There is no principle of estoppel which can aid the defendants, nor can they invoke the doctrine of laches. Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738; Smyth v. Neal (Or.) 49 Pac. 850; Boggs v. Mining Co., 14 Cal. 368; Water Supply & Storage Co. v. Tenney (Colo. Sup.) 51 Pac. 505; Lower Latham Ditch Co. v. Louden Irrigating Canal Co. (Colo. Sup.) 60 Pac. 629, 83 Am. St. Rep. 80; Lux v. Haggin, 69 Cal. 255, 10 Pac. 674; Bathgate v. Irvine (Cal.) 58 Pac. 443, 77 Am. St. Rep. 158; Rigney v. Tacoma Light & Water Co., 9 Wash. 577, 38 Pac. 147, 26 L. R. A. 425.

6. The equities. Defendants claim that it is inequitable, to use the language of their counsel, "to lay barren and waste the lands of defendants in Montana that two farms in Wyoming may be supplied with water." This may appeal to state pride and local bias, but the contention disregards the maxim that he who is first in time is strongest in right, which is the very essence of the doctrine of appropriation. An appropriator is entitled to the water used by him to the fullest extent as against all persons subsequently claiming. Complainant and intervener in this case found certain natural conditions. There was a running stream upon the public lands, supplied from the snows of the Pryor Mountains. It afforded water sufficient for their purposes. The arid lands near and adjoining which were subject to settlement invited its use. Their needs as farmers required it. They took advantage of the benefits which the laws guarantied and which the conditions made available; hence the plea on behalf of the defendants that the creek goes dry every year, and did prior to their settlements, is not a defense, though it might, for the purposes of this decision, be admitted without aiding them. If the creek goes dry every year, it is because of the shortage of the supply above. It must be assumed that if no snow fell in the Pryor Mountains in any given year, that the water would perhaps not flow into Wyoming; that if this condition continued for several years the water would cease entirely to flow, even to the lands of the defendants, because the supply comes almost entirely from the snowfall. This is illustrative of what must necessarily be true; that is, the greater the fall of snow the more water. This is also true, that the more water which finds its way into the creek the greater will be the flow, and of course the more water that is diverted the less will be the supply. The appropriators took with the right to have the the stream continue to flow as it was wont to flow, and to remain in the condition in which they found it, and whenever water is diverted above it keeps back that which would otherwise reach them, and the more water that is kept back the less will the complainant and intervener have. But for the wholesale diversions by defendants the water would reach them later in the season, and abide longer, and this is what their appropriations entitle them to. In the abstract

there would be more people benefited by allowing the defendants to take all the water. Its flow through a sandy and gravelly stretch of something like eight or ten miles, and perhaps farther, is, in a measure, a waste, but equity does not consist in taking the property of a few for the benefit of the many, even though the general average of benefits would be greater. It can no more ignore well-defined legal rights than it can go in the face of a positive statute. Then, again, the theory of the defendants cannot be accepted. The witnesses perhaps have told the truth, but not the whole truth. That the water would not reach one lower down the stream is quite a common defense. It is often urged in irrigation suits by trespassers as a justification for their invasion of the rights of others. It is probably as old as irrigation and perhaps as trespass itself. In this case failure of the water to reach the complainant and intervener was co-incident with its use by the defendants. The fact that witnesses saw in the varying changes of the seasons a shortage of water at different points on the stream does not explain the whole situation; in other words, in one extremely dry season perhaps the water was lower than in another. It varies, and it varies because of the shortage of the supply above, and these defendants retarded its flow by reason of their diversions, which decreased the supply to that extent which prevented it from reaching Wyoming at all; and when the supply is diminished by the light snowfall the diversion of the defendants increases the shortage, and that is an invasion of the rights of the appropriators who are seeking the enforcement of their priorities in this suit.

7. Damages. No damages other than nominal can be recovered. The defendants did not act jointly. Each claimed individually. There was no community of action. It would not be proper to charge all or either of them with damages at the option of the injured parties, as in the case of a joint undertaking in tort, because their acts were not committed in pursuance of the same common purpose, although they produced the same general result.

8. Extent of the rights of complainant and intervener. The complainant and intervener, respectively, constructed ditches of sufficient capacity to irrigate the whole of their lands. The finding must be that they increased their cultivated area with reasonable diligence, particularly in the light of the unlawful diversions made by the defendants.

The master found that the intervener, Howell, had appropriated and was entitled to the use of 110 inches of water, miner's measure, for the irrigation of his 200 acres, which finding will be sustained. He did not find as to the amount diverted and used by the complainant. Upon that the finding will be that complainant is entitled to water for the irrigation of his 160 acres at the same ratio. Under the issues tendered, the priorities of the defendants as between themselves cannot be adjudged, nor can their prayer that those priorities be fixed, for the purpose of restraining them in the order of the date of their several appropriations.

Findings will be made in accordance with the views herein expressed. The exceptions taken by the defendants will be overruled in so far as they conflict herewith. The decree will enjoin the defendants from diverting the water of Sage and Piney creeks to the prejudice of the parties found to be entitled to the same as prior appropriators, and costs will follow the decree.