LOYNING, ET AL., RESPONDENTS, *v.* RANKIN ET AL., APPELLANTS.

No. 8591

Submitted October 24, 1945. Decided January 8, 1946.
Rehearing Denied Feb. 27, 1946.
165 Pac. (2d) 1006

Mr. Robert C. Strong, of Billings, and Mr. Ralph J. Anderson, of Helena, for appellants.

Mr. E. B. Merrill, of Bridger, and Mr. M. J. Lamb, of Billings, for respondents.

MR. JUSTICE CHEADLE delivered the opinion of the court.

Action to enjoin the defendants from diverting water from Piney creek in Carbon County, Montana. From a judgment for plaintiffs granting the relief prayed for, defendants appeal.

Piney creek rises in or near the Pryor mountains in Carbon County and flows in a westerly direction for about six miles to a point about a mile north of Warren, Carbon County, to a confluence with Sage creek. It has well defined banks and channel, the latter at places 12 to 15 feet deep, with a gravel or stony bed in some stretches, and with sharp descents where the water sinks into the substrats. It is entirely within the state of Montana. Sage creek rises in Montana, flowing in a general southerly direction about forty miles to its confluence with Piney creek, and thence into the state of Wyoming. The original point of diversion of the appropriated water right under which defendants claim is approximately twelve miles south of the Montana border, in Wyoming.

The plaintiffs are the owners of water rights to waters of Piney creek which were adjudicated in favor of their predecessors in interest by the Carbon county district court by decree dated in the year 1907, totalling 360 inches, and effective as of 1893 and 1894. Defendants are the owners of a water right to 110 inches of the waters of Sage creek and its tributaries, decreed to one T. N. Howell by decree in the Federal court action of Morris v. Bean et al., C. C., 146 F. 423, in 1906, effective as of April, 1887. This appropriation was made by Howell for the purpose of irrigating his land in Wyoming, and was so used until its conveyance, separate from that land, in 1919.

The interest of the plaintiffs William Larkin and Red Lodge Brewing Company arises from their ownership of a real estate mortgage covering the land and water right owned by the plaintiff Loyning.

The lands owned and operated by all of the parties are arid in character and will not successfully produce crops without artificial irrigation. The evidence shows that during the irrigation season the flow of Piney creek is insufficient to fully satisfy the amounts of water to which the parties are entitled under their various rights.

Plaintiffs allege that they and their predecessors have enjoyed the use and possession of water under their rights ever since entry of the decree by the Carbon county court, and that all thereof is necessary for the irrigation of lands of persons entitled thereto under such decree. They further allege that during the irrigation seasons of 1937 and 1938 the defendants, by means of a ditch tapping Piney creek, and a dam across said creek at the intake of the ditch, during such seasons have wrongfully deprived plaintiffs of the waters of the creek, in defiance of the latter's rights; that after such wrongful diversion and use, the defendants have failed to return such water to the channel of Piney creek, and permitted same to run to useless waste; that by reason of such wrongful diversion the crops planted on plaintiffs' lands during those years were largely burned up and dried out, to plaintiffs' great and irreparable loss and damage.

The prayer of the complaint is for an order perpetually enjoining and restraining defendants from using the waters of Piney creek to which plaintiffs are lawfully entitled, and preventing the diversion of any of such water when needed for the irrigation of plaintiffs' lands.

By answer and cross-complaint defendants set out their ownership of the Howell water right, alleging that it is prior and superior to plaintiffs' rights to the waters of Piney creek; allege that Piney creek is a tributary of Sage creek; that in 1919 defendants' predecessors in ownership of the Howell right changed the point of diversion of water thereunder from Sage creek, in Wyoming, to a point on Piney creek, in Montana, for the purpose of irrigating their lands, now owned by defendants; that ever since that year the defendants and their predecessors have obtained water at such new diversion point, and have used the 110 inches every year thereafter, without objection by plaintiffs or their predecessors; that by reason of their acquiescence in such continuous diversion and use, plaintiffs are guilty of laches, and should not be heard now to object thereto.

The answer further alleges that the water of Sage creek and its tributary, Piney creek, having been adjudicated for irrigation by the United States Circuit Court as aforesaid, and the rights of the waters of Sage creek, an interstate stream, and its tributary, Piney creek, being therein determined, and the said King, Bainridge and Young, predecessors in interest of the plaintiffs, having been parties to said action wherein their rights to said waters were determined, the United States District Court of Montana now has sole jurisdiction thereof and this court is without jurisdiction herein.

The allegations of the separate answer of the defendants are substantially repeated in their cross-complaint.

By reply the plaintiffs deny that Piney creek is a tributary of Sage creek, or was so adjudicated by the decree in the Federal court case, or that such decree made any adjudication of the waters of Piney creek; deny the right of defendants to change the point of diversion, as alleged, because of resulting injury to

plaintiffs, prohibited by section 7095, Revised Codes. Further, deny knowledge of claims of defendants to such waters hostile to plaintiffs' rights, and allege that defendants have never seriously or substantially interfered with plaintiffs' rights until the years 1937, 1938 and 1939.

The findings of the trial court, briefly stated, are as follows:

1. That plaintiffs are the owners of water rights in Piney creek, as decreed to their predecessors in interest in the action of Young v. King et al., and that commencing with the year 1917 all of the waters of that creek were needed during the irrigation season for the proper irrigation of plaintiffs' lands, and others entitled thereto under said decree.

2. That during the spring season flood waters will flow into Sage creek from Piney creek, but during the irrigation season the normal flow of water in Piney creek, after about July 1 of each year, is so limited in amount and sinks into the substratum to such an extent that even when the normal flow is not diverted and is unimpeded no substantial quantity of water will normally reach the confluence of Piney and Sage creeks.

3. That the defendants are successors to T. N. Howell in the ownership of a right to the use of 110 inches of the waters of Sage creek and its tributaries, decreed by the Federal court in the case of Morris v. Bean et al., C. C., 146 F. 423, and that prior to the ownership of said water right by the defendants and their immediate predecessors in interest, waters under said right were diverted from Sage creek at a point in the state of Wyoming below the confluence of Sage and Piney creeks in Montana, and were used for irrigation of lands in Wyoming.

4. That commencing with the year 1937 the defendants have diverted the waters of Piney creek for the irrigation of their lands in Montana, claiming that Piney creek is a tributary of Sage creek, and that they have a prior right to make such diversion as owners of the Howell right as decreed by the Federal court.

5. That the evidence in this cause, and from views by the

trial judge of the premises concerned, is insufficient to justify a finding that Piney creek is a tributary of Sage creek.

6. That except in times of flood water there is not sufficient water in Piney creek to supply the needs of both plaintiffs and defendants, and that by reason of defendants' diversion of water in 1937 and thereafter, the plaintiffs have suffered great damage to and loss of crops, and that unless restrained the defendants will continue to divert the waters of Piney creek to plaintiffs' damage.

From such findings of fact the court made the following conclusions of law:

1. That because the waters of Piney creek are limited in amount and except in time of flood sink to such an extent that no perceptible amount of water will reach the confluence of Piney and Sage creeks, it is not established in this cause that Piney creek is a tributary of Sage creek.

2. That, because of injury resulting to plaintiffs, the point of diversion and place of use of the Howell water right decreed by the Federal court cannot be changed from a point on Sage creek in the state of Wyoming where, at the time it was decreed, it was diverted for the irrigation of lands in Wyoming, * * * to a point on Piney creek in Montana, and the water of Piney creek diverted for irrigation of defendants' lands in Montana.

3. That the diversion of water from Piney creek by defendants is injurious to the plaintiffs. ·

The decree perpetually enjoins and restrains the defendants from using or in any manner interfering with the natural flow of the waters of Piney creek to the extent of the rights of plaintiffs as established by the decree in the case of Young v. King et al., to the detriment of the plaintiffs, or either or any of them. The decree further restrains the defendants from changing the point of diversion and place of use of the Howell water right from a point on Sage creek in Wyoming to a point on Piney creek in Montana.

In substance appellants assign error to the trial court in finding Piney creek was not a tributary of Sage creek; in concluding

that defendants could not rightfully change the place of diversion to a point on Piney creek in Montana, and that plaintiffs were entitled to an injunction against the defendants' diversion of water from Piney creek. Error is also assigned by failure to find that under the Federal court decree the predecessors of defendants were adjudicated a right in the waters of Sage creek and Piney creek, its tributary; that the predecessors of plaintiffs, and therefore plaintiffs, were bound by the Federal court decree; that plaintiffs were not prejudiced by the change of point of diversion; that plaintiffs were barred by laches to assert a claim of detriment by reason of change of point of diversion.

Defendants do not dispute the validity of the rights to waters of Piney creek claimed by plaintiffs, as decreed to plaintiffs' predecessors in the case of Young v. King and it is agreed that such are subsequent in time to the Howell right. Neither of the defendants or any of their predecessors in interest were made defendants in the Young case. In order for defendants to prevail, it must have been established, (1) that Piney creek is a tributary of Sage creek, and/or (2) that the change in the point of diversion under the Howell right from Sage creek to Piney creek was not injurious to plaintiffs as appropriators of Piney creek.

Appellants insist that the decree in the Federal court action was res judicata on the first proposition. In that action the predecessors in interest of the plaintiffs here were defendants. That decree provided:

"It is further ordered, adjudged and decreed that the intervenor, T. N. Howell, is entitled to one hundred and ten inches of the waters of Sage creek and its tributaries, miners measurement, of date August the 1st, 1890. * * *

"It is further ordered, adjudged and decreed that the complainant and intervenor each being prior to time to any and all of the defendants, is prior in right to them.

"It is further ordered, adjudged and decreed that the defendants and each and every of them, their solicitors, attorneys, servants, agents, representatives and their successors in interest

be and they are hereby perpetually enjoined from in any manner interfering with the rights of the complainant and intervenor as determined in this decree, and they are all commanded to allow at all times, when needed by the complainant and intervenor, a sufficient amount of water to flow down to them to satisfy their rights."

The opinion of the Federal court, upon which that decree was based, reported in 146 F. 423, 426, which is not a part of the record herein, contains the following language:

"The defendants are all citizens and residents of the state of Montana. They claim the waters of Sage creek and Piney creek, its tributary, by virtue of diversions made by them, and the use of the water so diverted; they deny the rights of the complainant and intervenor upon grounds which will hereinafter more fully appear, but are subsequent in time to both. Complainant seeks to enjoin the defendants from the diversion of the water from Sage and Piney creeks in Montana to his deprivation of the use of the water of Sage creek in Wyoming, and the intervenor seeks like relief."

It further states:

"The master found that the intervenor, Howell, had appropriated and was entitled to the use of 110 inches of water, miner's measure, for the irrigation of his 200 acres, which finding will be sustained. * * * Under the issues tendered, the priorities of the defendants as between themselves cannot be adjudged, nor can their prayer that those priorities be fixed, for the purpose of restraining them in the order of the date of their several appropriations.

"* * * The decree will enjoin the defendants from diverting the water of Sage and Piney creeks to the prejudice of the parties found to be entitled to the same as prior appropriators, and costs will follow the decree."

Affidavits of two of plaintiffs' predecessors, defendants in the Federal court action, were received in evidence herein, over objection. They were filed in that action to show cause why the

injunction asked therein should not issue. Such affidavits declare Piney creek to be a tributary of Sage creek.

Plaintiffs contend that there was no diversion of water by defendants so as to interfere with the former's rights until the year 1937; that therefore no actual change in the point of diversion to Piney creek took place until that year. The record contains the following testimony in this regard by the plaintiff Fees:

"Q. During the years 1937, 1938 and 1939, has there been some difficulty over the water in Piney creek, and particularly over that dam? A. Yes.

"Q. Now, tell the court just what happened there. A. Well, they would dam up the whole creek and take all the water. I would insist I had some of the water there. I would go take out the dam and get some.

"Q. And has this happened in each of the three years I have mentioned? A. Yes.

"Q. Has it happened more or less continuously? A. Yes.

"Q. Will that continue to happen in the future if nothing is done about it? A. Absolutely.

"Q. Now what has been the effect of that during the three years upon your crops and Mr. Loyning's? A. We have been damaged severely.

"Q. Go ahead and describe how. A. Well, when they take all the water in the creek, why we cannot raise anything on our land.

"Q. The crops burn up, do they? A. The crops burn up. We plant crops, and they won't even come up.

"Q. The ground dries up? A. Yes, the ground dries up.

"Q. What is the effect upon the stream that runs through your place? A. Dried up completely. * * *

"Q. Now, to what extent, if any, did you have trouble prior to the three years you have described—1937, 1938 and 1939? A. We did not have any trouble. They did not use all the water. They did not use any of the water they are trying to use now.

"Q. What do you know, if anything, about their claim? Do you know the nature of their claim to the creek? A. No, I do not.

"Q. Well, prior to these three years you had plenty of water to irrigate your land with? A. Yes, sir.

"Q. And, if you know, how about Mr. Halmet Loyning? A. I mentioned 1934 there as the year that none of us got any water.

"Q. And with that exception, did you have plenty of water? A. Well, maybe not, what you might call plenty, but we got along. We got along in a neighborly way.

"Q. Did you have a crop? A. Yes."

It appears from his testimony that defendants constructed a new ditch in 1936 or 1937 into which water was diverted about ¼ mile above the previous diversion point of such water by defendants and their predecessors; that thereafter practically all of the stream's flow was diverted into such ditch by defendants during the irrigation season, much of which was conducted away from the Piney creek watershed, so that its wastage and seepage was not returned to that creek.

It thus appears that no diversion was made by defendants which interfered with plaintiffs' rights, or to their detriment, until at least 1936. Testimony of the plaintiffs tends to show that prior to 1937 plaintiffs had received and used water in sufficient amounts to successfully irrigate their land. This condition appears to have existed since at least 1919.

The trial court found that the normal flow of water in Piney creek, after about July first of each year, is so limited in amount and sinks into the substratum to such an extent that even if not diverted or impeded no substantial quantity of water would reach the confluence of Sage and Piney creeks. While testimony in this regard is conflicting, it substantially supports this finding. For example, the witness Clapp, who had been a forest ranger in the vicinity for eight years, testified:

"Q. Now, Mr. Clapp, will you describe to the court the nature of the flow of water in Piney creek, beginning in the

spring and continuing throughout the irrigating season? A. Well, ordinarily, anywhere from the first of May until the middle of July you may look for high water. Sometimes, of course, you may have high water, oh, perhaps along about the 20th of April. But ordinarily from May until July you will have the high water season in Piney creek. After that it drops off.

"Q. Does it drop off rather rapidly? A. Well, yes, after it starts once along in August it gets pretty low.

"Q. Well, now after the season of high water is over, if the water of Piney creek was unobstructed, unimpeded, in any way, to what extent would water reach Sage creek? * * * A. Well, I would say that—

"Q. That is, if you know. A. I would say that the water would not reach Sage creek at all."

The plaintiff Fees testified:

"Q. Now, one other question I want to ask you about, and that is in regard to the water, taking it at Piney creek. Now, after the water dropped—which, I assume, was sometime around July 4 —, if the stream was unobstructed and no water was diverted, how much water would get into Sage creek? A. I am absolutely positive that no water would get into Sage creek until the following May.

"Q. Where would the water go? A. Well, it would just probably go into the ground along through the creek."

The plaintiff Loyning testified:

"Q. What do you say about the flow of Piney creek? Is it higher during the spring than it is later on in the season? A. Yes.

"Q. Tell the court about that. Tell the court just what happens there. A. Well, it starts to rise any time after the 20th of April. It starts to rise almost any time after the 20th of April. One week might be high, and the next week might be low, according to the weather. If it is hot and snow is on the mountain, it will melt and the creek will rise. In July—

in June it still is up; and in July, then it starts to fall off. There won't be much water.

"Q. Well, now, about how much water, on an average during the years I have mentioned, would flow in the channel if it was unobstructed, after high water, up at the upper end there? A. Well, around three or four hundred inches—four hundred.

"Q. If that was unimpeded, if it was unobstructed, would it go on down to Sage creek? A. No.

"Q. What would happen to it? A. It would sink."

Based upon the above-quoted testimony, and other in the ▮ record, and upon a personal inspection of the premises, the trial court found that the evidence was not sufficient to support a finding that Piney creek is a tributary of Sage creek. Under the rule in Montana the question of whether one stream or other source of water supply is a tributary of another is one of fact. Appellants contend, however, that this question is res judicata, as to this controversy, by reason of the decree in the Federal court case adverted to. Appellants argue that such decree adjudged Piney creek to be a tributary of Sage, and that such holding can only be modified by proceedings in the Federal court; that any proceedings in a state court to have a contrary situation declared would constitute a collateral attack upon that decree, and that the trial court here was without jurisdiction to make such finding. For reasons to appear we find it unnecessary to determine these questions.

Section 7095, Revised Codes, provides: "The person entitled to the use of water may change the place of diversion, if others are not thereby injured, and may extend the ditch, flume, pipe, or aqueduct, by which the diversion is made, to any place other than where the first use was made, and may use the water for other purposes than that for which it was originally appropriated."

As above noted, the evidence tends to show that from at least as early as 1919 the plaintiffs and their predecessors in interest have used the waters of Piney creek under rights decreed in the Young case. It also shows that while the defendants, or

their predecessors in interest, did, about that year, make some diversion of water from Piney creek under the Howell right, such diversion was not such as to interfere with plaintiffs' use of said water. In 1936 defendants again changed the point of their diversion by tapping Piney creek with a new ditch, by means of which they diverted practically the entire flow of the creek during the years 1937, 1938 and 1939. Thus, though plaintiffs, not having been injured, had no grounds for complaint prior to 1937. The question is, then, whether plaintiffs were injured by the changing of .the ‿point of diversion at that time.

Before proceeding to the determination of that question we ▉ think it proper to say that the prior appropriator of the waters of a stream gains the right to the use and natural flow of waters of all streams tributary thereto, in so far as they may be necessary to afford him the amount of water to which he is entitled. 67 C. J. 1006; Long on Irrigation, 2d Ed., sec. 134, p. 234; Wiel, Water Rights in the Western States, 3d Ed., Vol. 1, sec. 337, p. 358.

The trial court found that by reason of defendants' diversion of water in 1937 and thereafter, plaintiffs have suffered great damage to and loss of crops; and concluded that diversion of this water is injurious to plaintiffs.

It is well established in this state that a prior appropriator may not change the place of diversion of water so as to injure junior appropriators. This is inferentially provided by statute (section 7095, Revised Codes), and determined by decisions of this court. In Featherman v. Hennessy, 43 Mont. 310, 115 Pac. 983, 986, this court, speaking through Mr. Chief Justice Brantly, said: ''The right to the use of water in the streams of this state is public. 'As between appropriators, the one first in time is first in.right' (Rev. Codes sec. 4845 [now section 7098]); but when the first appropriator has finished his use he must return the water to the stream, to be used by subsequent appropriators. (Rev. Codes, sec. 4844 [now section 7097]). But though he may change the point of diversion or may use it for

other purposes, his right to do so is subject to the well-settled rule that the change may not affect injuriously the rights of subsequent appropriators. Gassert v. Noyes, 18 Mont. 216, 44 Pac. 959; Head v. Hale, 38 Mont. 302, 100 Pac. 222; Kinney on Irrigation ·& Water Rights, sec. 234.'' See also Carlson v. City of Helena, 43 Mont. 1, 114 Pac. 110; Galiger v. McNulty, 80 Mont. 339, 260 Pac. 401; Wiel, Water Rights in the Western States, 3d Ed. Vol. 1, section 505, p. 543.

It is obvious, of course, and is established by the evidence, that plaintiffs have been injured by defendants' diversion of water in 1937 and subsequently. Since that time they have been unable to irrigate their land, with resulting crop failures. The question is whether such damage was caused by the change in the point of diversion of water by defendants under the Howell right.

The evidence sufficiently establishes, we think, that prior to 1937 the plaintiffs and their predecessors obtained sufficient water to irrigate their lands. Since that time defendants, during the irrigation seasons, have deprived plaintiffs of this water by diverting practically the entire flow of the stream. Whether the beneficial use of the Howell right in irrigating the lands in Wyoming for which the original appropriation was made, would have required all or a part of the flow diverted by plaintiffs prior to 1937, does not appear. We assume not, however, from the facts of the continued diversion and use by plaintiffs until that year. Decree in the Federal court case was dated May 28, 1906. The Howell right, therein adjudged, was conveyed to defendants' predecessors in February, 1919. Defendants claim that change in point of diversion from Sage to Piney creek was made in 1919, but as noted, the change which first injured plaintiffs, and of which they now complain, was not made until 1937. Under the circumstances it seems inescapable that plaintiffs were injured by the 1937 change in point of diversion. Appellants argue that plaintiffs were benefited, rather than injured, by the change, because by diverting the water on Piney creek, the satisfaction of their right would

require only 110 inches; whereas, because of inevitable evaporation and seepage, the delivery of that amount to a point some sixteen miles downstream would require that a much larger amount be permitted to flow unobstructed down Piney creek; that, if necessary to supply requirements in Wyoming under the Howell right, the plaintiffs must refrain from diverting any water from Piney. But such a condition has not been shown to exist. And appellants overlook the fact, sufficiently established by the evidence, that, even if not diverted or interfered with, none, or practically none, of the flow of Piney creek would reach Sage creek during the irrigation season, and, therefore, would not be available for use under the Howell right. Defendants' rights must be measured by the original appropriation and the use thereunder. The trial court has found that the waters of Piney creek would not, if unimpeded, reach Sage creek. Prima facie, plaintiffs were entitled to the use of the waters of Piney creek if such use did not interefere with the natural flow of Sage creek. In Ryan v. Quinlan, 45 Mont. 521, 124, Pac. 512, 515, this court said:

"The lake being upon the public domain, the plaintiff was prima facie entitled to make use of it and to intercept the overflow as he did, provided that in doing so he did not interfere with the use by defendants of the natural flow in the creek. The burden was then cast upon the defendants to show that, if uninterrupted, the flow finds its way into the creek by a defined channel either upon the surface or underground, and that plaintiff's appropriation of it diminishes the volume of water flowing in the creek."

A similar burden confronted the defendants here, which the trial court has found they failed to sustain. Since based upon substantial evidence such finding will not be disturbed.

We think the finding as to plaintiffs' damage suffered by ▮ reason of the diversion by defendants, and the conclusion as to plaintiffs' injury, are supported by substantial evidence, and must be permitted to stand. In view of this conclusion the question of whether or not Piney creek is a tributary of Sage

creek becomes immaterial, and need not be decided, since the court's finding in that regard is not necessary to support the judgment.

Appellants urge that plaintiffs' right to complain of the ▮ change in points of diversion is barred by laches. In support of this defense they argue that the change was made in 1919, or twenty years prior to the commencement of this action. While the evidence tends to show that some steps were taken looking toward a diversion in that year and some water actually diverted, the change which adversely affected plaintiffs' rights did not occur until 1936 or 1937. Prior to then plaintiffs could not complain because they had not been injured. Therefore, the delay in bringing suit was not in excess of three years, and probably not over two. We cannot say that three years is an unreasonable delay, and defendants have made no showing that they have been in any manner damaged or adversely affected by the delay, or of any change in the circumstances of the parties altering their situation. As is said in Johnson v. Kaiser, 104 Mont. 261, 65 Pac. (2d) 1179, 1184: "There was no pleading of laches, but assuming this defense may be raised without a plea, it does not appear that any change in the circumstances of any of the parties to these transactions had occurred which had materially altered the situation during the delay. In the absence of a showing of a material alteration in the condition and circumstances of the parties where the lapse of time is short of the statute of limitations, the defense will not be permitted. Riley v. Blacker, 51 Mont. 364, 152 Pac. 758, and cases cited."

The material findings and judgment are sufficiently supported by substantial evidence.

The judgment is affirmed.

Mr. Chief Justice Johnson and Associate Justices Adair and Angstman concur.

Mr. Justice Morris (dissenting).

I dissent. The judgment of the lower court constitutes a collateral attack on a decree of a federal court by a state court

wherein the subject matter was the same and was between the same parties litigant or their successors in interest.

The rule of res judicata applies. The judgment in the case of Morris (Howell, Intervenor) v. Bean et al., C. C. 146 F. 423, rendered May 8, 1906, has not been revised nor modified in any subsequent proceeding. All the parties involved in the case at bar are successors in interest of some party whose rights to the waters of Piney creek as a tributary of Sage creek were determined in that action and it is also expressly held there that Piney creek was a tributary of Sage creek. All the rights of plaintiffs were foreclosed by that adjudication unless it were shown that the plaintiffs were injured by a subsequent change of the place of diversion. The record does not show any such injury. It does appear that the plaintiffs suffered from a diminished supply of water to produce a satisfactory yield of grain a number of different years but it does not show that defendants took any more water than they were entitled to under the decree in Morris v. Bean, supra. Practically all of the plaintiffs testified in substance that they were injured by the defendants because the defendants took water that they claim they were entitled to. Of course they had to show that they suffered damage and naturally they could not testify to anything else than that the damage was due to the defendants' taking more water than they were entitled to but mere statements to the effect that they were damaged for such reasons is not evidence. The question as to whether the defendants took more water than they were entitled to under the decree mentioned was the very question in issue and the mere statement unsupported by other testimony made by the plaintiffs who claimed to be injured is of no value as evidence.

Rehearing denied February 27, 1946.