JAMES TAYLOR, Respondent, *v.* JAMES WELCH et al., Appellants.

WATER RIGHTS, WHERE STREAMS FLOW OVER OR THROUGH WELL DEFINED CHANNELS.—Every proprietor of land through which flows a stream of water has a right to the use of the water flowing in its natural channel without diminution or obstruction. The same rule applies to water which flows in a well defined and constant stream in a subterranean channel, but not to water percolating through the soil, or even flowing through an unknown and undefined channel.

APPEAL from Clatsop County.

This is a suit in equity for an injunction and for damages. The complaint alleges that plaintiff is the owner of certain

real property in the city of Astoria, upon which is situated his dwelling. That from time immemorial a spring branch has been wont to flow through this land, from which he has hitherto obtained water for his domestic, household and other purposes, and that he has no other suitable and convenient supply of water upon his land. That up to the time of the grievances alleged in the complaint, this spring branch supplied, during all seasons of the year, sufficient water for all necessary and convenient uses upon said land. That this spring branch does not rise upon the lands of plaintiff, but comes from a spring pond or swale above upon the land of the appellant, Nancy Welch, the wife of defendant, James Welch. That defendants have dug and are now continuing open upon the land of Nancy Welch, a ditch, or artificial channel from the before mentioned pond or swale so as to divert the water from the premises of plaintiff, and to convert the same entirely to the use of defendants, to plaintiff's injury, etc.

The answer denies all of the material allegations of the complaint, except that it admits that there is on the lands of the appellant, Nancy Welch, a pond or swale, and that defendants, partly for the purpose of reclaiming said swale, and partly for the purpose of securing a greater flow of water for their own use, through the only natural outlet from the swale, did clear out the natural outlet from the swale, and the only channel by which the waters of the swale could escape, or ever did escape, but denies that they thereby in any way diverted any waters which were accustomed to flow to the premises of plaintiff.

The reply denies all allegations of new matter in the answer, and alleges that at the time of the digging of the ditch complained of, there was and now is and ever has been a natural outlet and channel from the swale or spring described in the complaint, by which the waters thereof were accustomed to flow over and upon the lands of plaintiff.

The court below decreed a perpetual injunction in accordance with the prayer of the complaint, but without damages, and from that decree defendants appeal to this court.

*Dolph, Bronaugh, Dolph & Simon and W. D. Hare*, for appellant.

*F. J. Taylor and F. R. Strong*, for respondent.

By the Court, WATSON, J.:

The rules of law applicable to this case seem to be well settled. Every proprietor of land through which flows a stream of water, has a right to the use of the water flowing in its natural channel without diminution or obstruction. (Wash. on Ease. 215.) The same rule applies to water which flows in a well defined and constant stream in a subterranean channel. (Angel on W. C., sec. 112; Wash. on Ease. 364); but it does not apply to water percolating through the soil or even flowing through an unknown and undefined channel. (Wash. on Ease. 210; Id. 364.) These rules, together with the maxim that every person may use his own property as he pleases, provided such use is not an injury to another, are, we think, all the principles of law necessary to a decision of the case. The only question to be decided by us is one of fact. Does the evidence before us prove the existence af a constant and well defined. stream of water flowing in a subterranean channel, swale, spring or basin on the land of defendants described in the pleadings and evidence to the spring described as Taylor & White's spring, in the evidence and upon the maps used in the argument before us, prior to the digging of the ditch complained of. It appears from the evidence, that the distance from the basin to Taylor & White's spring is about three hundred and thirty feet; that the spring is about seventy feet lower than the basin, and that between them is a ridge rising from eleven to fifteen feet above the basin, composed of trap rock and earth. It is the theory of respondent that the waters of the basin, prior to July 28, 1874, the date of the construction of the ditch complained of, flowed in a well defined channel through this ridge to the spring known as Taylor & White's spring. No witness testifies that he ever saw such a channel, or that he knows of its existence. Several witnesses for plaintiff

swear that they believe such a channel exists, but none of them attempts to define it or trace its course. The reasons they give for their belief are that immediately after the ditch was dug the water partially ceased to rise in Taylor & White's spring, and that about the same quantity of water flows in the ditch complained of as formerly rose in the spring. These facts, if admitted to be true, are altogether as consistent with the theory that Taylor & White's spring was fed by water percolating through the earth and rocks from the basin as with that of the existence of a regular channel from the basin underground to the spring. There is a conflict in the evidence upon the point whether the water in Taylor & White's spring failed in dry seasons before the construction of defendant's ditch, and whether the natural outlet of the swale is along the line of the ditch? Whether it is the natural outlet or not, or whether a subteraneous stream flowed in the same direction from the basin, is like the claim of plaintiff, also a theory. Taking into consideration the fact that the ground in that direction is many feet lower; that there is in that direction a depression in the ground around the basin, and that it terminates in a ravine, and that the waters of the basin have in certain seasons of the year been discharged in a surface channel in that direction, this theory seems to us as probable as that of plaintiff.

One witness for plaintiff, it is true, testifies that there was formerly, at a point about thirty feet above Taylor & White's spring a hole six or eight inches in diameter through which water could be seen flowing in a full strong channel in the direction of the spring. When we consider that this point was three hundred feet from the basin and only thirty feet from the spring, and that a wet, boggy place intervened, we cannot attach much importance to the evidence. This fact is entirely consistent with the waters being derived from percolation through the hill from the basin, or with the water being derived from some other source. A number of other theories, more or less probable, have been suggested, but as in our opinion the evidence fails to establish that of plaintiff with sufficient

certainty to warrant us in decreeing against defendants a perpetual injunction, it is not necessary for us to consider them. We do not think the right of plaintiff is sufficiently clear upon the evidence to warrant us in interfering with defendants' use and enjoyment of their own property. Courts of equity will not interfere by injunction where the rights of plaintiff are doubtful. (Hill. on Injunc., sec. 16; Will. Eq. Jur. 392.) It follows that the decree of the court below must be reversed and that the complaint be dismissed.