Decided 2· July, 1900.

## ·BOYCE *v.* CUPPER.

[ 61 Pac. 642.]

WATERS—APPROPRIATION OF SURPLUS.

1. The right to use water from a nonnavigable public stream depends upon the date of the appropriation; thus, A, being a prior appropriator, has a right to take enough water for his necessary purposes, after which the next appropriator may use enough of the surplus for his necessary use, and so on, but the first appropriator cannot buy the land of, for example, the third appropriator and use the water for this land as against the second appropriator.

INAUGURATION OF ADVERSE USE OF WATER.

2. Where it appears that defendant's use of the water of a stream for irrigation purposes was not so extensive as to render the water supply of plaintiff, a lower riparian owner, insufficient, such use by defendent is not so adverse to plantiff's right as to form a basis for a claim of title by adverse user: *North Powder Milling Co.* v. *Coughanour*, 34 Or. 9, cited.

PERCOLATING WATER—RIGHT OF RECAPTURE.

3. Percolating water, the course of which is unknown and unascertainable, belongs to the realty on which it is found, but, after having passed into a channel, ownership of it ceases and it cannot be recaptured: *Taylor* v. *Welch*, 6 Or. 198, cited.

From Grant : ROBERT EAKIN, Judge.

This is a suit by Clara Boyce against H. A. Cupper to enjoin the diversion of the water of a nonnavigable stream. The plaintiff alleges, in substance, that she is the owner in fee of twenty acres of fruit land in Grant County, Oregon; that about 1870 her predecessor in interest diverted the water of a small stream known as "Cupper Creek," and made a prior appropriation of all the water thereof, which he and his successors have since constantly used in irrigating said land, until about June 12, 1898, when the defendant unlawfully diverted and appropriated the water of said creek to which she is entitled, in consequence of which her fruit trees were damaged, and that if such diversion be permitted to continue she will suffer irreparable injury. The defendant denies the material allegations of the complaint, and avers, in effect, that about 1870 his predecessors in interest settled on unsurveyed public land of the United States embracing said creek, and made a prior appropriation of all the water thereof, which he and his successors have since constantly used in irrigating said land, and that the water so used by plaintiff and her predecessors was the surplus which he permitted to flow down to her premises. The reply having put in issue the allegations of new matter in the answer, a trial was had, resulting in a decree that defendant was entitled to all the water of said creek above his ditches, and the plaintiff appeals.

MODIFIED.

For appellant there was a brief and an oral argument by *Mr. Thornton Williams.*

For respondent there was a brief over the names of *John J. Balleray* and *Victor Z. Cozad*, with an oral argument by *Mr. Balleray.*

37 OR.—17.

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1. The evidence shows that said creek is a small, nonnavigable stream which rises in the foothills of the western spur of the Blue Mountains, in Grant County, flows in a southerly direction, and empties into the north fork of the John Day River. The snow from these mountains, melting in the early spring, causes the creek to carry quite a volume of water, but as the season advances it gradually decreases, until about the middle of July, when the bed of the stream, except the lower part thereof, which is supplied by springs, usually becomes dry. About June, 1869, one Robert Ogle settled upon a tract of unsurveyed public lands of the United States, and, having thereafter appropriated the water of said creek to the irrigation thereof, he transferred his interest therein to William Welch, who sold the same to the defendant. The land having been surveyed, the defendant filed pre-emption and timber-culture entries thereon of one hundred and sixty acres each, but, having made final proof and secured the title to his pre-emption, he relinquished the timber-culture entry, and filed a homestead thereon, by which he secured a title thereto. Marcus Anderson settled upon one hundred and sixty acres of land on said creek below defendant's and above plaintiff's, land, and, having secured a title thereto, conveyed the premises to the defendant. The plaintiff's predecessor in interest settled upon the public lands on the north fork of the John Day River at the mouth of Cupper Creek about August, 1869, and appropriated water from the latter stream, which he and his successors have used in irrigating the land now owned by plaintiff, raising thereon fruit and vegetables. The court found that defendant's predecessor made a prior

appropriation of the water of Cupper Creek, and, while there is some conflict in the testimony respecting the priority of the appropriation, we think the finding is supported by the weight of the testimony. Whether it was Ogle's intention to secure the title to three hundred and twenty acres when the land upon which he settled was surveyed does not appear, but it is evident that defendant, when he purchased the improvements thereon from Welch, did not intend to irrigate the land upon which Anderson settled. Plaintiff's predecessor appropriated the excess of the water flowing in Cupper Creek after Ogle's prior right was supplied, and Anderson was not entitled to use any water so long as plaintiff's needs remained unsatisfied. The court further found that defendant, after securing the title to the Anderson land, had appropriated water to the irrigation thereof, and used the same more than ten years adversely, whereby a right had been acquired, as against plaintiff, to continue such use.

2. The use of the water in irrigating the Anderson land could not become adverse to plaintiff's dominant estate until it infringed her right by depriving her premises of the use of the water which was appurtenant thereto : *Wimer* v. *Simmons*, 27 Or. 1 (50 Am. St. Rep. 685, 39 Pac. 6); *North Powder Milling Co.* v. *Coughanour*, 34 Or. 9 (54 Pac. 223). The testimony shows that there are fruit trees growing on plaintiff's land, some of which have been set out about twenty-five years, and that, without the use of water from Cupper Creek to irrigate them, they must inevitably have died. This physical fact is a circumstance tending to disprove the theory that the irrigation of the Anderson land was adverse to plaintiff's use. It also appears that in most seasons the creek affords sufficient water to supply the use of every appropriation, and that plaintiff's land was never deprived of the use of

the water in the early irrigating season until 1896, when it was unusually low.

3.   We think the testimony fails to show that the defendant acquired an adverse user of the water of Cupper Creek to irrigate the crops on the Anderson place, and hence he cannot use such water thereon when by doing so it would infringe plaintiff's right.   The transcript shows that on the defendant's pre-emption and homestead claims there are several springs or marshes, the waters from which do not flow in any defined channel, but percolate the soil, and reach Cupper Creek below his ditches on said claims, but above the Anderson place.   These springs undoubtedly supply much of the water used by plaintiff and her predecessors in irrigating the land now owned by her.   It is contended by defendant's counsel that the water from these springs situate on their client's land, not being confined to any ascertained surface or subterranean channel, is a part of his estate, and, this being so, he has a right to permit it to flow into and down the creek to the Anderson place, and there capture and use it in irrigating said land.   The rule is general that water percolating the soil beneath the surface, the course of which is unknown and unascertainable, belongs to the realty on which it is found :   Gould, Waters, § 280 ;   *Taylor* v. *Welch*, 6 Or. 198 ;   *West* v. *Taylor*, 16 Or. 165 (13 Pac. 665);   *Wheatley* v. *Baugh*, 25 Pa. St. 528 (64 Am. Dec. 721);   *Hanson* v. *McCue*, 42 Cal. 303 (10 Am. Rep. 299);   *Southern Pacific Ry. Co.* v. *Dufour*, 95 Cal. 615 (30 Pac. 783, 19 L. R. A. 92);   *Roath* v. *Driscoll*, 20 Conn. 533 (52 Am. Dec. 352);   *Trustees, etc.* v. *Youmans*, 50 Barb. 316 ;   *Crescent Mining Co.* v. *Silver King Mining Co.* 17 Utah, 444 (54 Pac. 244).   The springs and marshes situate on defendant's pre-emption and homestead claims having no perceptible outlets, the water percolating the soil therefrom continued to be his property as long as it remained a part of the soil with

which it was intermingled, but when it reached the channel of the creek defendant's property therein ceased, because it had passed his power of ordinary control. In the absence of surface water caused by rains or melting snow, the volume of water found in the bed of a stream necessarly depends upon the springs which furnish the supply. If such springs have a well-defined channel which conducts the water into a stream, an appropriation of the waters of the latter is *ipso facto* an application of the water of the springs to a beneficial use : *Low* v. *Rizor*, 25 Or. 551 (37 Pac. 82). When a stream is supplied by percolation, if the ownership of the water, after it reached the channel, continued in the person from whose land it imperceptibly emanated, thereby entitling him to recapture it in the stream at any point below, the right of prior appropriation would be practically denied ; but, as such right is fully recognized and firmly established by the courts in the arid regions of the Pacific Coast states and territories, it follows that the right insisted upon does not exist. The defendant having no right to irrigate the land purchased of Anderson from the waters of said creek, whether it comes there by percolation below his ditches or is the excess over his use thereof, the decree will be modified in this particular, and the defendant enjoined accordingly.                                   MODIFIED.