Argued October 17, decided October 24, 1911.

## AERNE *v.* GOSTLOW.

[118 Pac. 277.]

APPEAL AND ERROR—FINDINGS OF COURT—CONCLUSIVENESS.

1. Findings of a court without a jury are, under the express provisions of Section 159, L. O. L., deemed a verdict, and hence are conclusive on appeal, if sustained by any evidence.

PRINCIPAL AND AGENT—SURETY COMPANIES.

2. The declarations of an agent are not admissible to prove the fact of the agency; so that the fact that an agent of a bonding company affixed the signature of the company to a written permission to the obligee on a contractor's bond, giving him the right to make a final settlement with the contractor, is not evidence of his authority to do so.

PRINCIPAL AND SURETY—SURETY COMPANY—POWER OF AGENT—EVIDENCE AS TO AUTHORITY.

3. In an action on a contractor's bond, evidence *held* to justify a finding that the person who gave the plaintiff authority to make a final settlement with the contractor, was the manager of the bonding department of the surety company which executed the bond, and had ostensible authority to sign such a paper.

PRINCIPAL AND SURETY—SURETY COMPANY—AGENT—LIMITATIONS ON POWER—PRESUMPTION AS TO AUTHORITY.

4. Where a surety company permits a person to hold himself out as its ostensible agent and in charge of its bonding business, he will be presumed to have a general agency; and persons dealing with him are not bound to search the company's records to ascertain if there are limitations thereon.

From Multnomah:  WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is an action by C. Aerne, Jr., against A. E. Gostlow and the Union Guarantee Association, a corporation. The case was tried without a jury and from a judgment

in favor of plaintiff, the Union Guarantee Association appeals. The facts are as follows:

In March 1909, plaintiff let a contract to defendant Gostlow for the erection of a dwelling house in Portland. The contract price was $6,300, and the building was to be completed within 100 days from March 9, 1909. Gostlow entered into an undertaking for the faithful performance of the contract, and defendant Union Guarantee Association became his surety thereon. The contract was made part of the undertaking, and is in the form in general use by the American Institute of Architects and the National Association of Builders. Those portions of it material to this case are substantially as follows:

The contractor was to provide all materials and labor in the erection of the building, according to the drawings and specifications of E. Kroner, architect for the owner, who was made sole arbiter. Alterations in the work on Kroner's written order were provided for. Upon failure of the contractor to promptly prosecute the work, or other default in the conditions of the contract, upon certificate to that effect by the architect, the owner was authorized to take possession and complete the work; and in the event of delay in the completion of the contract, caused by the act of the owner, architect, or other contractor, or by fire, strikes, lockouts, or other casualty not chargeable to the contractor, the time fixed by the contract for the completion of the building was to be extended for an equivalent period, which was to be determined by the architect. The latter was also to make estimates every two weeks, as the work proceeded, of the value of labor and materials furnished by the contractor, and thereupon the owner was to pay the contractor 80 per cent. of the amount of such estimates, as certified by the architect. The final payment was to be made within five days after the building was completed. It is also provided that the owner be permitted to retain out of any installment of the

contract price, due or to become due, an amount sufficient to indemnify him against any lien or claim chargeable to the contractor, for which, if established, the owner would be liable, and a covenant on the part of the contractor to refund to the owner all money that the latter may be compelled to pay in discharging any lien on the premises suffered in consequence of the contractor's default.

The bond provides, in substance, that the Union Guarantee Association shall indemnify and save harmless the owner from "any monetary loss resulting from a violation of any of the terms, covenants, and conditions of the above-mentioned contract on the part of said principal [the contractor] to be performed." It was issued subject to the following conditions, among others not material to the present controversy: (1) That upon any default on the part of the contractor in the performance of any of the terms or conditions of the contract, written notice thereof shall be delivered by the obligee to the surety at its home office within three days after the occurrence of such default shall have come to the knowledge of the obligee; (2) that the surety shall have the option, in default on the part of the contractor, to assume and complete the contract, and be entitled to all the rights and properties of the contractor arising out of the contract, including all deferred payments, retain percentages, and credits due at the time of such default or to become due; (5) that obligee shall retain not less than 15 per cent. of the value of all work and material furnished in the performance of the contract until complete performance of all its terms, covenants, and conditions by the contractor, and that the obligee shall faithfully perform his part of the contract.

The Union Guarantee Association had its head office and principal and only place of business in a room on the ground floor of the Commercial Club Building in Portland, where it conducted the several departments and

branches of its business, including the making and issuing of indemnity contracts and bonds to contractors, builders, and others, for compensation in money. The office of the association was furnished in the usual way, with counter and railing, behind which, scattered over the room, were desks and tables for the various officers and clerks; but there were no cards, signs, or notices in the place, nor on any of the desks, to indicate the office, position, or employment of the several occupants, so that strangers having business with the association made inquiry at the counter and were directed by some person in the office behind the counter to the clerk or official to whose department the matter appertained. At the time the indemnity bond in question was issued, N. W. Rountree was general manager of the Guarantee Association, but, having a business of his own, did not make his office with the association and gave but a small part of his time to its business.

Gostlow completed the building about September 11, 1909, and on September 13th the architect issued his final certificate of completion and acceptance. From time to time, during the progress of the work, plaintiff paid to Gostlow on certificates of the architect, as provided in the contract, sums aggregating $4,750, or a little less than 80 per cent. of the contract price of $6,300, so that at the time of completion there was due to Gostlow $1,450, or a little over the 20 per cent. which the contract required plaintiff to retain. Gostlow demanded payment; but before settling with him, plaintiff went to the office of the surety company and asked for the manager of the bonding department, and was introduced to J. Edward Krull as such official. Plaintiff testified that, in this interview, he stated to Krull that Gostlow had completed his contract, and that the final payment would amount to about $1,400; that Gostlow had requested him to pay some of his subcontractors or employes sums aggregating

about $800, and that there would be in the neighborhood of $600 to be paid to Gostlow personally; and that he offered to pay the amount over to the Guarantee Company, if they saw fit to accept it. Krull inquired as to whether Gostlow owed any other money, and plaintiff told him he only knew of two other accounts, one being for about $525 and the other for $600 or $700. Krull expressed confidence in Gostlow's honesty, and told plaintiff that the company had been secured by Gostlow for the bond, and gave plaintiff written permission over the signature of the company to make a final settlement with Gostlow. Plaintiff thereupon settled with Gostlow, paying $852.95 to his subcontractors on his order, and $597.05 to him personally. Gostlow, at the time, was insolvent; but this fact was not known either to the plaintiff or to the company, and in a day or two after the settlement he absconded.

On September 28, 1909, suit was commenced against Aerne to foreclose a lien on the property, which was the first notice plaintiff had of a failure on the part of Gostlow to protect him from loss, as provided in his undertaking. Later other liens were filed, which, with the first lien mentioned, aggregated $2,469.43. Plaintiff gave the defendant company notice of these liens, as required in the undertaking, and requested it to settle and adjust the same, and upon their refusal to do so he settled the claims at a cost of $2,430.15, and brought this action against the defendants to recover the amount. Gostlow made default, and the Guarantee Company answered, first by general denial, and also by a further and separate answer, setting up three defenses; the first being as follows:

"That the bond referred to in plaintiff's complaint, and set out as a part of said plaintiff's 'Exhibit A,' among others, contains the following provisions: 'Provided, however, that this bond is issued subject to the following

conditions: First, That upon any default on the part of said principal in the performance of any of the terms or conditions of said contract, written notice thereof, with a verified statement of the particulars constituting the default, with the date thereof, shall be delivered by the obligee to the surety at its home office in the city of Portland, county of Multnomah, State of Oregon, within three days after the occurrence of said default shall have come to the knowledge of the obligee.' And this defendant alleges that said plaintiff wholly failed and neglected to comply with the provisions just above set out, and further alleges that said plaintiff did not within three days after the occurrence of said default, and after the same came to plaintiff's knowledge, notify the defendant of said default and that said plaintiff never furnished this defendant with written notice of any such default, with a verified statement of the particulars constituting the same; and this defendant alleges that the said A. E. Gostlow did default in the performance of various terms and conditions of said builder's contract set out as part of said plaintiff's 'Exhibit A,' referred to in said complaint, and that said plaintiff wholly failed to give written notice thereof, with the verified statement of the particulars constituting the default, to this defendant, within three days after the knowledge of said default came to said plaintiff; and this defendant further alleges that it never received any written notice from said plaintiff containing a verified statement of the particulars constituting the default of said Gostlow, at any time."

The second defense alleges that plaintiff failed to retain 15 per cent of the amount due Gostlow until the final completion of his contract, as conditioned in the undertaking. The third defense alleges a failure of plaintiff to make estimates of the work every two weeks, and to pay Gostlow 80 per cent of the estimated value of the labor and material used in the building up to the time of the estimate, as provided in the contract, and alleges that plaintiff, in violation of the terms of the contract, had paid to Gostlow sums in excess of the amounts therein provided.

The action was tried by the circuit court without a jury, and, the findings and judgment being in favor of plaintiff, defendant company appeals.          AFFIRMED.

For appellant there was a brief over the names of *Messrs. Wilbur & Spencer, Mr. Arthur M. Dibble* and *Mr. Wilfred E. Farrell,* with oral arguments by *Mr. Schuyler C. Spencer* and *Mr. Farrell.*

For respondent there was a brief over the names of *Messrs. Bauer & Greene,* with an oral argument by *Mr. Thomas G. Greene.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

Counsel for defendants concede that if Krull's letters, consenting to a settlement by plaintiff with Gostlow, are binding upon the Guarantee Company, defendants are liable in this action. This, viewed from defendants' standpoint, reduces the controversy to a single proposition, and we will so treat it.

1. In considering the findings of the circuit court on that subject, it will be borne in mind that, by Section 159, L. O. L., the findings of the court in an action tried by it without a jury are deemed a verdict, and therefore, if there is any evidence to sustain such findings, they are conclusive upon appeal. *Fulton* v. *Earhart,* 4 Or. 62; *Hicklin* v. *McClear,* 18 Or. 126 (22 Pac. 1057) ; *Courtney* v. *Bridal Veil Box Factory,* 55 Or. 210, 214 (105 Pac. 896).

It is hornbook law that an agency cannot be proved by the declarations of the agent, and therefore the fact that Krull affixed the name of the company to the letters is not any evidence of his authority to do so. We are of the opinion, however, that there is in this record evidence, perhaps not of the most convincing character, but reasonably strong, which tends to show that Krull had authority to write the letters in question, or at least that defendant

had so held him out to plaintiff and the public, which amounts to the same thing. The question is not so much what actual authority Krull possessed, as what authority he apparently possessed; and persons dealing with the corporation were not bound to search its records to ascertain what limitations these placed upon his power to act, if it permitted him to hold himself out as an agent in charge of its bonding business.

The testimony shows that he was occupying a desk in the general office of the company, and that when plaintiff went there and inquired of an employe for the manager of the bonding department he was directed to Krull's desk, and that Krull was in the office of the company, and, assuming to act for it, wrote the letter in question upon one of the company's letter heads. Kroner, the architect, testifies that he had occasion several times to look after bonding business with the company, and Krull always attended to the business. This witness stated that the company's office was one large room, with several desks and tables, and usually two or three persons occupying the desks; that there were no signs designating any particular person or department of the business; and said that on another occasion he went with a contractor and inquired of one of the occupants for the manager of the bonding department, and was referred to Mr. Krull, who transacted the business. J. D. Mackie, representing one of the lien claimants, testified that he called at the office and told Mr. Hurlbutt, general manager of the company, that he wanted to speak to the man who had charge of the bonding department, and was thereupon introduced to Krull, who told him he would be protected. Subsequently he called again, and asked Hurlburt to fulfill this promise, and Hurlbutt told him he should have asked for Krull's credentials.

We are of the opinion that these circumstances are evidence that Krull was at least an ostensible agent of the

defendant company, and constitute some evidence of actual agency. The value and effect of it was for the lower court. Defendant company admits that Krull was an agent for the purpose of receiving applications for bonds; but this testimony indicates that his recognized powers extended beyond this. He is not in the position of a solicitor for insurance, who does business outside the office of the company. He was occupying a place in the office. Plaintiff and others were referred to him as the manager of the bonding department, and he transacted business with them as such. In many respects this case is similar to *Haner* v. *Furuya,* 39 Wash. 122 (81 Pac. 98). In that case Haner, the plaintiff, wishing to present a claim against Furuya for goods sold to a person who claimed to be his agent, called at Furuya's place of business and inquired in regard to the payment of the account. He was referred by a person in charge of the office to room 7 in the building, and, on going to that room and stating to a man he found there the nature of his business, he was assured that the account was all right and would be paid. The court held that these facts were amply sufficient to justify a finding that the man in room 7 was an agent of Furuya.

4. Persons dealing with a known agent have a right to assume, in the absence of information to the contrary, that his agency is general. *Methuen Co.* v. *Hayes,* 33 Me. 169; *Austrian & Co.* v. *Springer,* 94 Mich. 343 (54 N. W. 50: 34 Am. St. Rep. 350).

These considerations render it unnecessary to discuss the other questions so ably presented by counsel.

The judgment of the circuit court is affirmed.

AFFIRMED.