Argued February 17, reversed and remanded March 16, 1920.

# WENTWORTH v. WINTON CO.

### (188 Pac. 204.)

**Principal and Agent—Party Informed That Settlement Agreement Requires Principal's Approval cannot Assume That Agency is General.**

1.   Where an automobile manufacturer's agent, in negotiating a settlement of the business affairs of such manufacturer and a local dealer, informed the dealer that any settlement would have to be taken up with the home office, the dealer was in no position to assume that his agency was general.

**Judgment—Recovery must be Based on Allegations of Complaint.**

2.   In an action on a complaint seeking to enforce defendant corporation's liability to pay for the use of premises solely upon the agreement of its agent with plaintiff lessee, no liability of the company to pay for the premises merely because possession was turned over to it can be enforced.

**Corporations—Liable for Agent's Conversion of Goods Used in Its Business.**

3.   Where an automobile manufacturer's agent in charge of its factory branch, in connection with which it operated a garage and repair-shop, converted articles left on the premises by a dealer formerly acting as its local agent, and the articles were such as one would naturally expect to find in a garage or repair-shop, and most of them could have been rightfully purchased by him under his admitted authority, it was liable for their value in an action on implied contract.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1.

This is an action to recover money.  The complaint contains two causes of action.  The Portland Motor Car Company was an Oregon corporation.  The defendant is an Ohio corporation engaged in the manufacture of automobiles, with its principal office in Cleveland, Ohio; and, although its name was changed twice during the period covered by this controversy, it will at all times be referred to as the Winton Company, its present name.

The Portland Motor Car Company had a contract with the Winton Company under the terms of which the former was made the agent for the sale of the latter's automobiles in certain territory in Oregon and Washington. In January, 1912, the Oregon company leased a building in Portland for a period of five years for a monthly rental of $300 during the first two years of that period. The Oregon company maintained in this building a garage and an automobile repair-shop in connection with its business of selling automobiles manufactured by the Winton Company. In the latter part of 1912 differences arose between the two corporations concerning the agency, and because of those differences they negotiated for a settlement of their business affairs. These negotiations resulted in a written contract terminating the agency of the Oregon corporation. The contract was signed by the Oregon company on or about January 15, 1913, although when signed by it the paper bore no date except the month and the year; the day of the month was left blank. After being signed by the Oregon company, the instrument was forwarded to Cleveland, Ohio, for the signatures of the officers of the Winton Company. The defendant signed the contract, but before doing so filled the blank for the day of the month and changed the word "January" to the word "February," thus dating the paper February 1, 1913.

There are two provisions in the contract which are material to this litigation. One relates to a transfer of the lease, and the other to the sale of certain tools and equipment owned by the Oregon company. The Oregon company had sublet a part of the building to Henry L. Mann, who was obligated to pay a rental of $100 per month. Under the terms of the contract the Oregon company assigned to the Winton Company the

lease held by the former together with the lease to
Mann. The writing also recites that the Oregon com-
pany sells to the Winton Company ''the following de-
scribed property''; and this recital is followed by an
itemized list of over fifty articles of personal property
amounting in the aggregate to the stipulated value of
$1,124.92. The Winton Company bought only a part of
the tools and office equipment owned by the Oregon
company. The items enumerated in the written con-
tract include only those articles which the Winton Com-
pany purchased. The tools, office equipment, and
other personal property which had been used by the
Oregon company were not removed, but were left in
the building. The Winton Company took possession
of the leased building and of the personal property
purchased from the Oregon company.

In the negotiations for the contract terminating the
agency the defendant was represented by G. W. Miller.
Plaintiff claims that when the contract was signed,
Miller, as the representative of the Winton Company,
agreed that the defendant would pay the rent, required
to be paid under the terms of the lease, commencing
with January 1, 1913. The defendant denies liability
for the month of January, and contends that its liability
begins with the date of the contract, February 1, 1913.
The Winton Company did not pay the rent for January
or February, and the Oregon company was obliged to
pay the rent for those two months. The net expense
to the Oregon company for the rent for those two
months, after deducting $200 paid by Mann, the sub-
lessee, amounted to $400.

The plaintiff also claims that after the Winton Com-
pany entered into possession of the leased building it
converted to its own use a large part of the tools and
other articles which the Oregon company owned and

had left in the building. The items of personal property alleged to have been appropriated by the Winton Company are claimed to have been worth, in the aggregate, the sum of $557.04.

The Oregon company was dissolved, and both the claim for rent and the claim for the value of the personal property alleged to have been converted were assigned to L. J. Wentworth, one of the stockholders of the Oregon company; and he then brought this action. The first cause of action is to the effect that the Winton Company agreed to take over the lease and pay the rent from January 1, 1913; and the plaintiff therefore says that because of the failure of the defendant to pay the rent for the months of January and February it is indebted to him in the sum of $400.

In the second cause of action there are averments of the alleged conversion of specified articles of personal property, followed by an averment that the plaintiff waives the tort and elects to sue the defendant on its implied obligation to pay the reasonable value of the property said to have been converted.

The defendant denies all the averments of the complaint except as otherwise affirmatively alleged in the answer. There is also a further and separate defense in which the defendant recites the execution of the contract terminating the agency and in which it is alleged that all the transactions between the two corporations were fully settled.

The reply denied that the contract settled all the transactions between the corporations and averred that the contract in no way affected the claim constituting the second cause of action. It was further alleged in the reply that the contract was actually made "in the fore part of January, 1913, and not on the first day of February, 1913."

The parties tried the cause to the court without the aid of a jury. The court signed and filed findings of fact from which he concluded that the plaintiff was entitle to recover $200 on account of rent for February and that he was not entitled to recover any further sum on either cause of action. There was a judgment against the defendant for $200 and the plaintiff appealed.                    REVERSED AND REMANDED.

For appellant there was a brief and an oral argument by *Mr. W. Y. Masters.*

For respondent there was a brief over the name of *Messrs. Wilbur, Spencer, Beckett & Howell,* with an oral argument by *Mr. F. C. Howell.*

HARRIS, J.—The trial court ruled that the defendant was liable for the rent for the month of February, but that it was not liable for the rent for the month of January. The first cause of action, which relates to the rent, proceeds on the theory that it was agreed between the two corporations that in consideration of the termination of the agency the Winton Company would take over the lease and assume the payment of the rentals "from and after the first day of January, 1913.' The written contract does not say that the defendant shall pay the rentals from and after January 1, 1913. This paper, it will be recalled, was signed by the Oregon company on or about January 15, 1913, and then delivered to G. W. Miller so that he could forward it to Cleveland, Ohio, for the signatures of the officers of the Winton Company. When the Oregon company signed the paper it was dated January, 1913, but there was an unfilled blank for the day of the month. When the officers of the Winton Company signed they filled

the blank and dated the instrument February 1, 1913.
The plaintiff claims that Miller, acting for the defendant, and the Oregon company agreed when the latter
signed the contract that the Winton Company would
pay the rent from and after January 1st. If the defendant is liable at all for rent for the month of January, it is liable only because of the agreement which
Miller attempted to make.

Miller was the manager of the "factory branch at
Seattle, Washington." The Winton Company sent
him to Portland to negotiate for a settlement of the
differences which had arisen between the two corporations. On November 19, 1912, Miller wired to the Oregon company:

"Have taken up with factory matter of taking over
your plant but have been turned down cold. * * "

On November 30, 1912, Miller wrote to the Oregon
company a letter which opens thus:

"Confirming a talk I had with your Mr. Ettinger regarding what the writer, personally, would be willing
to do, which talk or action must be verified by our home
office at Cleveland.

"I would state that it would be satisfactory to assume the lease on the building you now occupy, known
as the Winton Building, with the understanding that
the rent of this building is $300 per month with the
privilege of subleasing any part of the rooms now
occupied by other tenants."

After discussing certain details the letter concludes
with the following paragraph:

"It is distinctly understood that this is not a proposition; it is only a line of suggestion for you either to
accept or reject and for me to take up with the home
office."

1, 2. Thus it is seen that, while the Oregon company
was dealing with Miller as a known agent of the Winton

Company, nevertheless the Oregon company was in no position to assume that Miller's agency was general, because the Oregon company had information to the contrary: *Leavitt & Co.* v. *Dimmick,* 86 Or. 278, 288 (168 Pac. 293); *Hillyard* v. *Hewitt,* 61 Or. 58, 62 (120 Pac. 750); *Aerne* v. *Gostlow,* 60 Or. 113, 121 (118 Pac. 277). Miller had authority to negotiate for the Winton Company but he was without authority to bind it. The Oregon company was told by Miller in express words by the letter of November 30th, that he had no authority except to negotiate; and the fact that the written contract, after having been signed by the Oregon company, was delivered to Miller to be forwarded to Cleveland, Ohio, there to be signed by the officers of the defendant was of itself an indisputable acknowledgment of Miller's lack of authority to bind the Winton Company. It is possible that, independently of the agreement with Miller, the defendant is liable for the rent at least from January 16th, because of the alleged fact that the premises were turned over to and received by the defendant on that day; but, if there is such a liability, it cannot be enforced in this action on the present complaint for the reason that the plaintiff is here seeking to enforce liability solely upon the agreement of Miller. The findings and conclusions of the trial court concerning the rent must be approved.

3. The plaintiff contends that the findings of fact which relate to the second cause of action do not support the conclusions of law deduced by the court. Finding V, which is the first finding connected with the alleged conversion of the personal property, is to the effect that the portion of the property "that was not purchased by the Winton Company under the contract aforesaid was left in charge of the Portland branch of the Winton Company by direction of G. W.

Miller, manager of the Seattle branch, with the understanding that subsequently the said G. W. Miller would take up the question of the purchase of the balance of said property with said Portland Motor Car Company from the Seattle branch."

In finding VI, it is related that after the execution of the written contract terminating the agency "the Winton Company opened up a factory branch in the City of Portland, Oregon, in the premises described in the lease in said agreement mentioned, and advertised in the newspapers of the City of Portland that it had opened up a factory branch, with H. R. Roberts as manager thereof, and issued its stationery and bill heads describing said business as a factory branch of the Winton Company in Portland."

Finding VII, the remaining material finding, reads as follows:

"That subsequently said H. R. Roberts returned to the plaintiff a portion of the property that had been left with the Winton Company aforesaid, but kept and retained the property described in the complaint herein, and used and consumed the same in carrying on said business of the said branch of said Winton Company, and said Winton Company had the use and benefit thereof, but denied that said H. R. Roberts had any right or authority to take or convert said property or that it is liable therefor."

These findings may possibly be better understood if a brief account is given of additional portions of the record. The Oregon company maintained its sales department and garage and repair-shop in the leased building. The Oregon company had in its possession on consignment from the Winton Company certain "parts" which were kept in what one witness called the "parts-room." At some time in 1912, either in November or December, H. R. Roberts, representing

the Winton Company, took and retained possession of the "parts-room." The plaintiff claims that the personal property purchased by the Winton Company together with the building was turned over to the Winton Company on January 16th, the next day after the Oregon company signed the contract, while the defendant insists that it took possession of the premises on February 1st. At any rate, whether the possession was delivered by the Oregon company on January 16th or on February 1st, it is conceded that whenever possession was taken it was taken by H. R. Roberts as the agent of the defendant. The Winton Company continued the business of selling automobiles, and it also continued to maintain a garage and repair-shop. The billheads used by the defendant referred to its place of business in Portland as "Factory Branch." Some of the letter-heads referred to the place of business as "Portland Branch" of the defendant. Roberts signed letters as the "Portland Mgr." of the defendant; and it is not contended that he was without authority thus to sign letters. The tools and equipment purchased from the Oregon company by the Winton Company were purchased for use in the business which the defendant continued to maintain. Roberts hired the men employed in the garage and repair-shop. According to the testimony of A. J. Schaefer, who succeeded Miller as manager of the Seattle branch, Roberts did not have any authority "that he did not get from" the witness; and yet when asked whether Roberts had any authority "to buy such goods as are described in this complaint * * in a general way" the witness answered as follows:

"Oh, yes, in the ordinary conduct of his business he would buy such things as grinding compound, oils, gasoline, and tools for drill-presses, or anything of that sort, as they went out, and these bills were approved

by Cleveland, audited by Cleveland, and that is all. He
wouldn't have any authority to buy anything in bulk,
or machinery, or even typewriters, or anything of that
sort that pertained to the plant and equipment.''

The complaint enumerates more than one hundred
and forty items, and they include such tools and appli-
ances as are ordinarily used in a garage or repair-shop,
a few trade fixtures, an assortment of materials used
in repairing automobiles, a number of automobile parts,
and seven or eight office appliances, such as letter-
trays, inkstands, a bill stamp, and the like. All of
these articles were such as one would naturally expect
to find in a garage or repair-shop. Most of the items
were such as Roberts, as manager, could have right-
fully purchased from time to time for use in the garage
or repair-shop, even though his authority be strictly
measured by the limits fixed by Schaefer; and conse-
quently on the finding that the defendant used and con-
sumed all these items in carrying on its business and
''had the use and benefit thereof'' it is manifest that
as to these items at least the plaintiff was entitled to
a judgment. The items enumerated in the complaint
vary in value from five cents, the price of certain
cotter-pins, to $50, the price of five outside casings.
It is clear that nearly all of the articles enumerated
in the complaint were within the needs of the princi-
pal's business and therefore within the scope of the
actual or apparent authority of Roberts, who was the
managing agent of the defendant's business during the
period in which the articles were converted; and it may
be that every one of the items was within the needs of
the principal's business: 2 C. J. 643, 644.

It is difficult because of the condition of the record
to do more than to hazard a guess at the value of the
articles sued for; otherwise, we might attempt to fix

the values of all the articles and render a final judgment here, on the authority of Article VII, Section 3 of the Constitution.

The judgment·is reversed and the cause is remanded for such further proceedings as may not be inconsistent with this opinion.

REVERSED AND REMANDED.

McBRIDE, C. J., and BENSON and BURNETT, JJ., concur.