Argued at Pendleton May 3, affirmed June 14, rehearing denied
September 27, 1921.

# BROSNAN v. BOGGS.

(198 Pac. 890.)

**Waters and Watercourses—Water-master cannot Give Water Rights.**

1. Under Sections 6617, 6618, L. O. L. (Sections 5706, 5707,
Or. L.), as to duty of water-masters, a water-master is an executive
officer, whose conduct is regulated by some adjudication of water
rights, and his action must be founded on some decree, and, unless
a party can show some such right, he is not protected in diverting
or using water by any authorization by the water-master.

**Waters and Watercourses—Seepage Water Subject to Prior Appro-
priation.**

2. If the proprietor of lands would enjoy seepage water, he must
take it and use it before it leaves his premises, and, if he allows it
to escape into the channel of the stream, he cannot pursue it and
retake it as against the appropriator of the waters of that stream.

**Appeal and Error—Objection must be Particularized.**

3. Under Section 170, L. O. L., merely to object without giving
any reason does not present any question for review in the Supreme
Court.

**Evidence — Explanation of Testimony Held not a "Self-serving
Declaration."**

4. Allowing party, as witness, to give an explanation of what he
meant by his previously given testimony, is not error, such explana-
tion not being a "self-serving declaration," which is one made by
a party in his own interest at some time and place out of court,
and does not include testimony which he gives as witness at the
trial.

From Malheur: DALTON BIGGS, Judge.

In Banc.

The original complaint in this cause was against
Ivers, Boggs, Dolan and Gombert. A demurrer to
that pleading was sustained and the plaintiff
amended, making only Ivers and Boggs defendants.
After alleging his rightful possession of certain
realty in Malheur County the plaintiff declares in

---

2. Land owner's right in percolating waters, see note in 99 **Am.
St. Rep.** 66.

substance that he has an adjudicated right to a certain portion of the water flowing in Willow Creek, dating from the year 1872, for 192.68 acres of said land, which water he has used in producing crops and pasturage on the land. He says also that both Ivers and Boggs claim water rights in Willow Creek, but that they are all inferior to his in time and right. He charges that Ivers and Boggs, acting together, built dams in the stream above his premises and maintained them during the irrigation season of 1918, diverting the water so that he could not use the same under his senior right. He claims damages on account thereof.

Boggs answered as follows:

"Comes now D. F. Boggs, and for himself alone, and answering to the amended complaint of the plaintiff, denies generally and specifically each and every allegation contained in said amended complaint, save and except what is herein modified, qualified, explained, or affirmatively alleged; and avers that all of the water used by defendant during the year of 1918, on the farm of defendant, or elsewhere, the same being the waters of Willow Creek, Malheur County, were so used by defendant under the immediate control and supervision of George Gombert, Watermaster of Malheur County, Oregon, and who, during all of the irrigating season of the year of 1918, was in charge of and in control of the distribution of the waters of the said stream; and that this defendant used no water for irrigating or for other purposes other than by the direction of him, the said George Gombert, Water Master, as aforesaid."

This was traversed by the reply.

Ivers died during the pendency of the action. His executors were substituted in his place and filed an answer, upon which issues were joined. The case went to trial, resulting in a judgment in favor of the

plaintiff against both defendants. Boggs alone appealed, hence no further notice will be taken of the connection of Ivers with the case.

Affirmed. Rehearing Denied.

For appellant there was a brief over the names of *Mr. George W. Hayes* and *Messrs. Hawley & Hawley,* with an oral argument by *Mr. Hayes.*

For respondent there was a brief over the names of *Mr. C. McGonagill, Mr. Carey M. Rader* and *Mr. Will R. King,* with an oral argument by *Mr. Mc-Gonagill.*

BURNETT, C. J.—The first two points suggested by Boggs in his brief are these: (1) "Since appellant took no water except that delivered to him by the water-master, he is not liable for any damages sustained by the plaintiff"; and (2) "The court erred in refusing to instruct the jury that the defendant had a right to construct dams in Willow Creek in order to divert water." It will be noted that Boggs does not plead any right in himself to the water, but says only that he took what the water-master gave him. In substance this is like the plea of Adam when accused of eating the forbidden fruit: "The woman thou gavest to be with me, she gave me of the tree, and I did eat": Genesis iii: 12. In that instance the pleading was held to be bad, and in principle that has been the law ever since. Under Sections 6617 and 6618, L. O. L. (5706 and 5707, Or. L.), cited by the defendant, it is the duty of the water-master to divide the water of natural streams—

"Among the several ditches and reservoirs taking water therefrom, according to the rights of each respectively. * * The water-master shall have author-

ity to regulate the distribution of water among the various users under any partnership ditch or reservoir, where rights have been determined, in accordance with existing decrees. * * Said water-master shall, as near as may be, divide, regulate and control the use of the water of all streams within his district by such closing or partially closing of the headgates as will prevent the waste of water, or its use in excess of the volume to which the owner of the right is lawfully entitled.''

1. The water-master is an executive officer, whose conduct is regulated by some adjudication of the rights to the water which is to be divided. His action must be founded upon some decree, and unless a party can show some such right, he cannot be protected by the action of the water-master, who in turn can justify only on some established right. As he has not pleaded a right to divert water from the stream, the defendant cannot complain because the court refused to instruct the jury that he had a right to build dams in the creek.

The defendant excepted to an instruction reading in part as follows:

''Neither is the water-master required to permit water to go down the stream when such action would amount to waste of the water. If you find therefore in this case at any time that if the water had been allowed to flow down the stream without let or hindrance it would not, including any seepage water that may arise between that point and the plaintiff's premises, reach the plaintiff's premises, then the defendants cannot be blamed because the turning of the water down the stream in such an instance would amount to a waste.''

The objection to the charge quoted in part was the inclusion of seepage water. Clearly, the instruction

had reference to water flowing in the channel of the creek. In *Boyce* v. *Cupper,* 37 Or. 256 (61 Pac. 642), the right of the land owner to water percolating the soil beneath the surface was recognized, but it was said in the same opinion:

"If such springs have a well-defined channel which conducts the water into a stream, an appropriation of the waters of the latter is *ipso facto* an application of the water of the spring to a beneficial use: *Low* v. *Rizor,* 25 Or. 551 (37 Pac. 82). When a stream is supplied by percolation, if the ownership of the water, after it reached the channel, continued in the person from whose land it imperceptibly emanated, thereby entitling him to recapture it in the stream at any point below, the right of prior appropriation would be practically denied; but, as such right is fully recognized and firmly established by the courts in the arid regions of the Pacific Coast states and territories, it follows that the right insisted upon does not exist."

2. The principle as to seepage water is that if the proprietor of the lands would enjoy the same, he must take it and use it before it leaves his premises. If he allows it to escape into the channel of the stream, he cannot pursue it and retake it as against the appropriator of the waters of that stream. No doubt, all streams are fed more or less by seepage water which gets into the channel from no visible source. As indicted in *Boyce* v. *Cupper, supra,* it would destroy the whole irrigation system of the arid states, if such water could be pursued into the stream by the land owner on whose premises the seepage began. No error was committed on this point.

Three other assignments of error are as follows:

"The court erred in permitting testimony as to the flow of Willow Creek in 1917."

"The court erred in permitting Brosnan to testify as to what his pasturage was for the years 1916 and 1917."

"The court erred in permitting the witness Brosnan to testify as to what it cost him to dig a well upon his land."

On each of these points the language of the bill of exceptions is as follows:

"Defendant by his attorneys duly objected, which objection was overruled by the court."

No reason for the objection is assigned. Section 170, Or. L., settled this matter thus:

"The point of exception shall be particularly stated."

3. Merely to object without giving any reason for the exception does not present any question for review in this court.

4. We learn from the bill of exceptions that while the plaintiff was on the stand as a witness in his own behalf he was allowed to give an explanation of some testimony he had given the day before, in effect that his land and that of the defendants was of the same character. In explaining his testimony he pointed out in substance the difference between the vegetation on his land and that of the defendant, and some other particulars not necessary to be mentioned. It is claimed that the court erred in refusing to strike out this explanation. In *Pacific Export Co.* v. *North Pacific Lumber Co.*, 46 Or. 194, 206 (80 Pac. 105), a witness was allowed to explain what he meant by the use of certain language. The court there said:

"This was proper. The witness was still under examination, and if he gave out an erroneous impression of the facts as he understood them, he had a perfect right to make the correction in the presence

of the jury. The same thing would be true if the erroneous impression were contained in a letter he had written relative to the subject, but the whole would be a matter for the jury's consideration as to the weight that should be attached to it.''

The explanation here in question is not a self-serving declaration, as argued by counsel. Such a declaration is one made by a party in his own interest at some time and place out of court, and of course cannot as a general rule be admitted in evidence. It does not refer to testimony which he gives as a witness at the trial. If a party, appearing as a witness in his own behalf, were denied the right of giving testimony favorable to himself, the privilege of being a witness, although a party, would be destroyed.

On the questions presented in the brief for review there was no error in the proceedings in the Circuit Court. The judgment is therefore affirmed.

AFFIRMED.    REHEARING DENIED.