Argued February 4, affirmed April 7, 1925.

## NATHAN THOMAS v. SMITH-WAGONER CO.

(234 Pac. 814.)

**Principal and Agent—Special Agency Held to Create Presumption of General Agency.**

1. Special agency *held* to create presumption of general agency in absence of any notice to contrary, and which, under Section 797, Or. L., is conclusive on jury unless overcome by other evidence.

**Principal and Agent—Whether Alleged Agent Making Loan for Plaintiff was Acting Within Apparent Scope of His Employment Held for Jury Under Evidence.**

2. In action for money entrusted to employee of loan company, whether such agent was acting within apparent scope of his employment in making the loan *held* for jury under evidence.

**Principal and Agent—Employee Held "Agent," not Servant of Company.**

3. Employee of loan company alleged to be merely servant, *held* to be "agent" where he brought his principal into contractual relations with third persons.

**Appeal and Error—Admission of Declarations of Supposed Agent as to His Authority Cured by Explicit Instruction.**

4. In action for money entrusted to employee of loan company, error in admission of his declarations as to his authority, which

---

2. See 21 R. C. L. 822.
3. See 21 R. C. L. 817.
4. See 2 R. C. L. 256; 14 R. C. L. 812.

were not admissible to show agency, *held* cured by explicit instruction not to consider such statements as to authority.

**Evidence—Principal and Agent—Declarations of Agent Admissible as Part of Res Gestae or on Issue of Fraud.**

· 5. In action for money entrusted to supposed agent, after *prima facie* case of agency had been established, it would have been proper to admit declarations of agent as to his authority as part of *res gestae* or relevant to issue of fraud.

**Trial—Order of Proof is Within Discretion of Trial Court.**

6. Although by better practice proof of agency is required before admitting declarations of agent, order of proof rests within discretion of trial court.

**Principal and Agent—Testimony of Custom of Defendant Company in Making Loans Held not Pertinent.**

7. In action to recover money entrusted to employee of loan company, testimony of practice or custom of company in making loans *held* not pertinent, as only issue was whether employee was acting within apparent scope of his authority.

**Principal and Agent—Conversation of Third Party With Employee Tending to Show Employee's Agency Held Admissible.**

8. In action to recover money entrusted to employee of loan company, conversation of third party with employee in defendant's office and while he was negotiating for loan *held* admissible as tending to show employee was held out as having authority to act.

**Appeal and Error—Testimony of Fraudulent Transactions of Employee, not Relevant to Issues, Held not Prejudicial, Where Same Character of Evidence had Been Admitted in Behalf of Complaining Party.**

9. In action to recover money entrusted to employee of loan company, testimony of fraudulent transactions of employee not relevant to issues *held* not prejudicial where same character of evidence had been admitted in behalf of complaining party.

**Appeal and Error—Refusal to Instruct Jury on Certain Propositions not Reviewable Error in Absence of Requested Instruction.**

10. Refusal to instruct jury on certain legal propositions *held* not reviewable error in absence of request for such instructions.

**Appeal and Error—General Exception to Entire Charge not Considered.**

11. General exception to entire charge without specifying erroneous parts thereof will not be considered.

5.  See 1 R. C. L. 507.
6.  See 1 R. C. L. 511.
8.  See 21 R. C. L. 820.
9.  See 2 R. C. L. 247.
10.  See 14 R. C. L. 795.
11.  See 14 R. C. L. 810.

**Principal and Agent—One Clothing His Agent With Apparent Authority to Accept Money Required to Bear Loss.**

12. One clothing an agent with apparent authority to accept money and thus enabling him to obtain advantage over another, *held*, required to suffer loss, where agent misappropriated money.

See (1) 2 C. J., p. 920, § 649.   (2) 2 C. J., p. 962, § 733.   (3) 2 C. J., p. 424, § 9.

From Multnomah: Robert G. Morrow, Judge.

Department 2.

Plaintiff in this action seeks to recover money which he says was placed with the defendant company, at its special instance, to be loaned, and avers that he was induced to do so by reason of the alleged fraudulent representations of its agent, the defendant Frank Cain. Smith-Wagoner Company is a corporation, which has been engaged as a broker in the insurance, real estate, rental, and loan business for several years, having its place of business in the City of Portland. Plaintiff alleges, in substance, that on February 3, 1921, and April 6, 1921, he gave to the defendant company the sums of $500 and $250, respectively, for the purpose of being loaned, and that at the time there was delivered to him by defendant, acting through its agent Cain, two notes, one purporting to have been signed by Albert Tozier, and the other by Dennis Madden, in the amounts above stated and bearing interest at the rate of 8 per cent per annum; that it was represented to him by Cain that these notes were secured by mortgages on real property and that the makers thereof were well able to pay the same when due. It was further averred that the signatures to these notes were forged by the defendant Cain and were not secured by mortgages

12. See 10 R. C. L. 378; 21 R. C. L. 854.

or otherwise. After making the essential allegations of an action for fraud, plaintiff asks judgment against defendants for the amounts stated, together with interest thereon at the rate of 8 per cent per annum as provided in the notes. Service was not obtained on Cain, and it appears he left for parts unknown soon after his alleged misdeeds were discovered. The defendant company, so far as material to a consideration of this case, answered denying the fraud as alleged, or that it had anything whatever to do with the transaction in question. It admits that Cain on January 1, 1920, entered its employ as a bookkeeper, and continued as such until March 18, 1921, when it is alleged his employment terminated. Defendant avers that Cain's authority was strictly limited to his work as bookkeeper, and that he had neither real nor apparent authority to accept money from its clients for the purpose of being loaned; that plaintiff was well and intimately acquainted with Cain and knew, or ought to have known, the limitation of his authority. On trial the jury rendered a verdict in favor of plaintiff for the amount demanded, and defendant now appeals, assigning numerous errors in the admission and rejection of evidence, the giving and refusal to give certain instructions, and the denial of motions for nonsuit and directed verdict.

AFFIRMED.

For appellants there was a brief and oral arguments by *Mr. J. H. Kelley* and *Mr. W. H. Powell.*

For respondent there was a brief over the name of *Mr. Arthur I. Moulton.*

BELT, J.—1. The principal question involved is whether there was any evidence to submit to the jury that Cain was acting within the scope of his apparent

authority in accepting money from the plaintiff for the purpose of being loaned. In the consideration of this question we are obliged to view the evidence in the light most favorable to plaintiff, for as stated by this court in *Connell* v. *McLoughlin,* 28 Or. 230 (42 Pac. 218).

"If there be any dispute as to the fact in issue (referring to proof of agency), it is clearly a question for the jury; or, if there be no dispute as to the facts, but there may reasonably be a difference of opinion as to the inferences and conclusions deducible therefrom, it is the province of the jury to determine the question."

Did the defendant corporation clothe Cain with that character of actual authority or permit him so to conduct himself in his employment as would cause a person of ordinary prudence in dealing with it to draw the inference, in view of all the facts and circumstances, that he was authorized to transact business in reference to loans? If this question be answered in the affirmative, the company is not permitted to say that Cain had no authority so to act. The rule is thus stated in 21 R. C. L. 856:

"Indeed, whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages, and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of his principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it."

So far as innocent third persons are concerned it is not a question of the actual authority given, but is rather a matter of determining what they, in dealing with an agent, are reasonably justified in believing the authority to be: *Austrian & Co.* v. *Springer,* 94 Mich. 343 (54 N. W. 50, 34 Am. St. Rep.

350). It is fundamental, and for which we take it no authorities need be cited, that if the defendant company held Cain out as possessing authority to deal with the public in the matter of negotiating loans, then it is immaterial to third persons, acting in good faith and with ordinary prudence, as to what actual restrictions had been put upon his authority.

"Persons dealing with a known agent have a right to assume, in the absence of information to the contrary, that his agency is general." *Rae* v. *Heilig Theatre Co.,* 94 Or. 408 (185 Pac. 909); *Hillyard* v. *Hewitt,* 61 Or. 58 (120 Pac. 750); *Aerne* v. *Gostlow,* 60 Or. 113 (118 Pac. 277).

In 2 Corpus Juris, 920 it is stated:

"If an agency is proved, without showing its extent, it is presumed to be general and not special; not in respect to everything, but only in respect to the business with which the agency is concerned. Third persons dealing with an agent have the right to presume that his agency is general, in the absence of notice to the contrary, even though as between principal and agent, there may be only a special agency."

And it is Code law (Section 797, Or. L.) that "a presumption * * may be overcome by other evidence, direct or indirect; but unless so overcome, the jury are bound to find according to the presumption."

As tested by these rules of law let us consider the evidence supporting plaintiff's theory of the case. Plaintiff knew that Smith-Wagoner Company for several years had been engaged as brokers in the insurance, real estate, rental, and loan business, and that it had advertised extensively in the papers as such. According to plaintiff's testimony he was a casual acquaintance of Cain, and prior to the transaction in question had often discussed with him on

the street and elsewhere the advisability of investing
money, as he knew that Cain was associated with the
defendant company and was interested in such mat-
ters.   Finally, after reaching a conclusion to loan his
money he went to the office of the company for that
purpose, and there met Cain.  ᐧ The business was con-
ducted in a suite of offices, consisting of a main room
with a long counter across the front and on each side
of which were private offices — one for Harry
Wagoner, the president of the company, and the
other for his brother Clarence, who is secretary and
treasurer.   In the main office and behind the counter
were arranged three desks for employees, one of
whom was the defendant Cain.   Cain's desk was
situated immediately behind the counter.   When
plaintiff, on February 3, 1921, went to defendant's
place of business for the purpose of making a loan,
he was met at the counter by Cain.   Permission was
then granted by one of the Wagoners to use his
private office, although the record does not disclose
that any person connected with the company knew
the nature of the business to be there transacted.
While in the private office Cain took from the safe
and exhibited to the plaintiff a note purporting to
have been signed by Albert Tozier, and made the
representations in reference to its security as alleged
in the complaint.   At that time Cain seemed to have
free access to various securities left in trust with the
company and impressed plaintiff with the idea, as
testified to by him, that Cain was authorized to nego-
tiate the loan in question.   Whereupon plaintiff
parted with his money as alleged.   A few weeks later
plaintiff again went to defendant's office for the pur-
pose of making a second loan, and substantially the
same transaction occurred.   Defendant contends that

Cain was not in its employ at that time, but there is evidence to the contrary, and it was therefore a matter for the jury to decide. There is also evidence that the witness Pelz, in July, 1920, went to defendant's place of business to obtain a loan, and was met at the counter by Cain, who introduced him to one of the Wagoners, stating at the time that "I have a little business with him," and Wagoner said, "All right, whatever you do, I will see you next time." Wagoner, according to Pelz' testimony, then left and they had the use of his private office, but after talking for some time about the matter of obtaining a loan Pelz went away and never returned to consummate the same. Defendant claims that its business is so organized that Harry Wagoner, as president, has exclusive charge of the mortgage department and his brother Clarence entire control of the real estate and insurance departments, and that it never at any time held out Cain as having any authority whatever to deal with its customers in the matter of making or obtaining loans. It was conceded, however, by the defendant company that Cain was authorized to receive money paid on rents, insurance premiums, and interest installments. It was not unusual for him to take the company's funds to the bank for deposit. He was under bond for the faithful performance of his duties.

2. While the authority of Cain might have been limited as claimed by the defendant, yet it must be observed that there was nothing whatever to put a reasonable person on inquiry as to the limitation of his authority. If it be true that Cain was authorized to accept payments in the manner above stated, how would any person, dealing with the company and knowing the kind of business in which it was en-

gaged, be apprised that he was not permitted to accept money for the purpose of making a loan? As to customers what was there to distinguish him as a special and not a general agent? The evidence established beyond controversy the existence of a special agency, and the plaintiff, in the absence of any notice to the contrary, had the right to assume the existence of a general agency, i. e., that Cain had the right to perform all things usual in the line of business in which he was then employed. Whether Cain was acting within the apparent scope of his employment was a matter for the determination of the jury in the light of all the facts and circumstances of the case: *Aerne* v. *Gostlow, supra.* No error was committed in denying motions for nonsuit and directed verdict.

3. The contention of appellant that Cain's status with the company was merely that of a servant and not an agent is untenable. In 2 Corpus Juris, 423, we find:

"The distinction between principal and agent and master and servant is very difficult to define; the two relations are essentially similar and the real difference between them may be said to be one of degree only. * * The only essential distinction is that the agent is employed to establish contractual relations between his principal and third persons, while the servant is not."

4–6. Cain brought his principal into contractual relations with third persons. Defendant predicates error in permitting plaintiff to testify concerning what Cain told him about appellant's business and the scope and extent of his authority. After a *prima facie* case of agency had been established it was proper to admit declarations that Cain made to

plaintiff as a part of the *res gestae* or relevant to
the issue of fraud, but extrajudicial declarations were
not admissible to show agency or the extent of his
authority. While we deem it the better practice to
require proof of agency before admitting declara-
tions of an agent, it is a matter of order of proof
and rests within the discretion of the trial court.
The court confessed error as claimed by appellant
relative to such testimony, but cured the same by an
explicit instruction not to consider any statements
of Cain that he was authorized to act for the defend-
ant.

7. Complaint is made that certain witnesses of the
defendant were not permitted to testify in regard to
the practice or custom of the defendant company in
making loans. We fail to see wherein such testimony
would have been pertinent to the issue as to whether
Cain in dealing with the plaintiff was acting within
the apparent scope of his authority. Plaintiff did
not contend that Cain had actual authority to de-
fraud him in the manner alleged. In our opinion the
trial court was right in excluding the evidence offered.

8. Defendant also claims error because witness
Pelz was allowed to testify to a conversation had
with Cain as to the character and extent of the lat-
ter's authority. The conversation occurred in the
office of the defendant and while Pelz was negotiating
for a loan. This testimony was admissible as tend-
ing to show that Cain was held out as having au-
thority to act. What we have heretofore said con-
cerning the question of establishing agency or scope
of authority by the declaration of an agent is appli-
cable to the point under consideration and need not
be repeated.

9. Exception is taken to the ruling of the court in admitting testimony as to certain alleged fraudulent transactions Cain had with the Ladd & Tilton bank. We agree that such evidence was foreign to the issues; but in view of the fact that the same character of evidence had been previously admitted on behalf of defendant, it is in no position to complain.

10. Assignment of error is made concerning the court's refusal to instruct the jury on certain legal propositions, but suffice it to say that no request was made for it to do so, and therefore its action in that respect is not reviewable. All requested instructions were covered by the court in its general charge to the jury with the exception of the one pertaining to a directed verdict, to which the defendant was not entitled.

11. A general exception was taken to the court's entire charge without specifying or calling attention to any erroneous statement of law therein contained, and for that reason we refuse to consider assignments of error relating to the instructions given: *Brosnan* v. *Boggs,* 101 Or. 472 (198 Pac. 890); *Hurst* v. *Hill,* 96 Or. 311 (188 Pac. 973); *McGilchrist* v. *Portland E. & E. Ry. Co.,* 79 Or. 91 (154 Pac. 419).

12. In this case it is evident that Cain misappropriated the money paid to him by the plaintiff, and the matter resolves itself into a question as to which one of two innocent persons must suffer the loss. Under the circumstances as disclosed by the facts in the instant case as found by the jury, the burden must fall on the defendant, which clothed its agent with apparent authority and thus enabled him to obtain advantage of the plaintiff: *Petersen et al.* v. *Pacific American Fisheries,* 108 Wash. 63 (183 Pac. 79, 8 A. L. R. 198).

Finding no error affecting the substantial rights of the defendant, the judgment of the lower court is affirmed.                                        AFFIRMED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.